# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| OREESE FOGG and KYLE WALKER, individually and on behalf of all persons similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.,<br><br>Defendant. | Civ. No. 21-7626 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

This matter comes before the Court on the motion (DE 64)[1] of Defendant Clean Harbors Environmental Services, Inc. ("Clean Harbors") to stay or, alternatively, transfer the action under the first-filed rule. Plaintiffs Oreese Fogg and Kyle Walker filed this putative class action (the "*Fogg* action") on March 31, 2021 for unpaid wages on behalf of "current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities." (Compl. ¶ 24.) Clean Harbors seeks to stay the *Fogg* action until the disposition of an ongoing putative class action that it contends is substantially similar: *McMurtry v. Clean Harbors Environmental Services, Inc.*, No. 20-cv-6774 (D.N.J.) (the "*McMurtry* action"). The *McMurtry* action was filed first-in-time in New Jersey state court on April 21, 2020 and removed to the District of New Jersey on June 2, 2020; the matter is currently before Judge Evelyn Padin. The *McMurtry* action seeks to certify a class on behalf of "current

---

[1]  Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Amended Complaint (DE 13)

Mot. = Clean Harbors' Brief in Support of Motion to Stay (DE 64)

Op. Mot. = Fogg and Walker's Brief in Opposition to Motion to Stay (DE 68)

and former employees of the Clean Harbors Defendants who performed work . . . at New Jersey facilities owned by Public Service Electric & Gas." (DE 64-2 ¶ 86.) For the reasons set forth below, I will **DENY** Clean Harbors' motion to stay or transfer.

## I. BACKGROUND

### A. The *Fogg* Action

The *Fogg* action is a putative class action against Clean Harbors where the plaintiffs allege that Clean Harbors failed to pay class members wages for time spent in meetings or work performed off-the-clock, or overtime wages for time worked in excess of 40 hours per week. (Compl. ¶¶ 1–3.) The class members include "employees of Clean Harbors who worked at one of Clean Harbors' facilities." (*Id.* ¶ 24.)

The *Fogg* plaintiffs allege that they performed substantial off-the-clock work without being paid. (*Id.* ¶ 18.) Clean Harbors also allegedly failed to accurately record the hours plaintiffs worked and managers often did not turn in time sheets, resulting in employees not being paid for their work. (*Id.*) At times, the plaintiffs were not compensated for time spent in mandatory monthly training sessions, which lasted approximately two to three hours. (*Id.*)

As a result of Clean Harbors' alleged failure to pay the *Fogg* plaintiffs for all hours worked, they claim violations of the Fair Labor Standards Act, 29 USC § 201, *et seq.*; the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a, *et seq.*, for failure to pay overtime wages; and the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.3, for failure to pay timely wages.

### B. The *McMurtry* Action

The *McMurtry* action is another class action against Clean Harbors where the plaintiffs allege that Clean Harbors failed to pay the putative class members at the "prevailing wage" rate required under New Jersey law. (DE 64-2 ¶¶ 1–5.) The putative class members include employees of Clean Harbors who worked at "facilities owned by Public Service Electric & Gas, as

part of the Energy Strong programs approved by the New Jersey Board of Public Utilities." (*Id.* ¶ 86.)

The *McMurtry* complaint states that, in 2011 and 2012, New Jersey was struck by multiple storms, which caused "severe damage" to the State's utility infrastructure. (*Id.* ¶ 44.) As a result, the New Jersey Board of Public Utilities issued an order in January 2013 requiring electricity suppliers to "carefully examine their infrastructure and determine how they could be better protected from flooding." (*Id.* ¶ 45.) In response to that order, Public Service Electric & Gas ("PSE&G") petitioned the Board of Public Utilities for approval of a program aimed at restructuring its electric and gas infrastructure, referred to as "Energy Strong I." (*Id.* ¶ 47.) Following various proceedings, hearings, and meetings, the Board of Public Utilities approved PSE&G's project. (*Id.* ¶¶ 49–52.)

Several years later, the Board of Public Utilities established "a regulatory mechanism supporting the implementation of an Infrastructure Investment Program . . . which allowed a utility to accelerate its investment in the construction, installation, and rehabilitation of certain non-revenue producing utility plant and facilities." (*Id.* ¶ 55.) Pursuant to the Infrastructure Investment Program rules, PSE&G petitioned for another project aimed at improving, modernizing, and rebuilding its systems in various ways, referred to as "Energy Strong II." (*Id.* ¶ 58.) In September 2019, following a series of hearings and meetings, the Board of Public Utilities approved the project. (*Id.* ¶¶ 59–60.)

PSE&G contracted with Clean Harbors to provide services for Energy Strong I and II. Clean Harbors in turn assigned the putative class members to perform work in relation to those projects at the PSE&G facilities. (*Id.* ¶ 74.) The *McMurtry* plaintiffs' work included, among other things, the use of equipment and machinery to remove oil, replace pipelines, and assist with the installation of new transformer structures. (*Id.* ¶¶ 75–77.) The *McMurtry* plaintiffs assert that their work at the PSE&G facilities qualified as "construction work on a public utility," but Clean Harbors failed to pay them at the required "prevailing wage" rate for such work. (*Id.* ¶¶ 79–83.) Plaintiffs

submitted time sheets for hours worked and believe that those time sheets have been maintained pursuant to legal requirements. (*Id.* ¶ 78.)

As a result, the *McMurtry* plaintiffs allege that Clean Harbors violated New Jersey's Public Utility Act, N.J. Stat. Ann. § 34:13B-2.1, *et seq.*, and Financial Assistance Act, N.J. Stat. Ann. § 48:2-29.47, *et seq.*

## II.  DISCUSSION

Under the "first-filed" rule, a district court may "enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *E.E.O.C. v. Univ. of Pa.,* 850 F.2d 969, 971 (3d Cir.1988); *see also Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 210 (3d Cir. 2016) (en banc) ("[The first-filed] rule is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority."). "[T]he rule's primary purpose is to avoid burdening the federal judiciary and to prevent the judicial embarrassment of conflicting judgments." *E.E.O.C.*, 850 F.2d at 977.

In their briefs, the parties apply different standards for application of the first-filed rule. Clean Harbors employs the "substantial overlap" test, which applies when the parties and issues in the two actions "substantially overlap," even if the matters are not identical. (Mot. p. 6); *see Tekno Prod., Inc. v. Glove Trends Inc.,* No. 19-cv-91, 2019 WL 7184544, at *9 (D.N.J. Dec. 26, 2019). In contrast, Fogg and Walker discuss whether the two matters are "truly duplicative," *i.e.*, involve the same issues and same parties. (Op. Mot. p. 4, 16); *see Coyoy v. United States,* 526 F. Supp. 3d 30, 43 (D.N.J. 2021). In *Coyoy*, I recently rejected the use of the more relaxed "substantial overlap" test and held that application of the first-filed rule depends on whether the two actions involve the "same issues" and "same parties," as set forth by the Third Circuit in *E.E.O.C. v University of Pennsylvania. See Coyoy*, 526 F. Supp. 3d at 43–44.

Regardless, even if the "substantial overlap" test applied, Clean Harbors could not satisfy it. Clean Harbors asserts that the putative classes in each case substantially overlap because both actions are brought against Clean

4

Harbors, both putative classes consist of employees suing for unpaid wages, and both cases involve discovery related to hours worked and rates of pay. (Mot. p. 8, 10–11, 13.) The similarities, however, end there.

While the *McMurtry* and *Fogg* actions are generally similar, Clean Harbors' comparison ignores some significant distinctions between the two. First, contrary to Clean Harbors' position, the two putative plaintiff classes do not substantially overlap. The *Fogg* action seeks to certify a class of employees "who worked at one of Clean Harbors' facilities" (Compl. ¶ 24), while the *McMurtry* action seeks to certify a class of employees who were assigned to "perform work on PSE&G facilities" (DE 64-2 ¶ 74). Although, as Clean Harbors argues, it is conceivable that an employee could be part of both classes, the proposed class definitions are not directed at similar groups of employees. *Cf. Catanese v. Unilever*, 774 F. Supp. 2d 684, 688 (D.N.J. 2011) (applying the first-filed rule to a class action where the proposed classes were "identical" and "each of the named plaintiffs would be included in the other's class"). Second, the underlying factual circumstances giving rise to the claims are entirely distinct. *See id.* at 687 ("[T]he most important consideration in a first-filed rule analysis is overlapping subject matter.") In the *Fogg* action, the plaintiffs assert that Clean Harbors failed to pay employees at its own facilities for time spent working off-the-clock or in mandatory meetings, and failed to pay overtime wages for work in excess of 40 hours per week. In the *McMurtry* action, the plaintiffs allege that Clean Harbors failed to pay them at the "prevailing wage" rate for work they conducted at PSE&G facilities in relation to PSE&G projects that qualified as construction work on a public utility. The *Fogg* complaint makes no specific reference to work performed at PSE&G facilities or an entitlement to be paid at the corresponding "prevailing wage" rate. Likewise, the *McMurtry* complaint makes no reference to unpaid wages for meetings, off-the-clock work, or overtime. In essence, Clean Harbors is alleged to have committed two distinct wrongs against two distinct groups of workers. These distinctions suggest that it is unlikely that allowing these cases to proceed at

the same time would result in "conflicting judgments." *See E.E.O.C.*, 850 F.2d at 977.

Therefore, even applying the "substantial overlap" test for the sake of argument, I would decline to apply the first-filed rule. *A fortiori,* I would deny the motion under the more rigorous test requiring that the issues and parties in the two actions be the same. For similar reasons I find no sufficient grounds to transfer the case to the docket of the judge hearing the first-filed case.

### III.  CONCLUSION

For the reasons set forth above, the motion to stay or transfer the action is denied. A separate order will issue.

Dated: September 29, 2022

/s/ Kevin McNulty
_____
**Hon. Kevin McNulty**
**United States District Judge**

6