UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OREESE FOGG and KYLE WALKER,** individually and on behalf of all persons similarly situated,<br><br>　　Plaintiffs,<br><br>　　v.<br><br>**CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.,**<br><br>　　Defendant. | Civ. No. 21-7626 (KM) (JBC)<br><br>OPINION |

**KEVIN MCNULTY, U.S.D.J.:**

　　This is a class and collective action brought by Oreese Fogg and Kyle Walker, the named plaintiffs. Now before this Court are two motions. First is the motion (DE 22)[1] of Fogg and Walker for conditional certification of the collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, and for court-authorized notice to be disseminated to the potential members of the collective. Second is the motion (DE 48) of Fogg and Walker to equitably toll the FLSA claims pending resolution of the motion for conditional certification. For the reasons set forth below, I will **GRANT** the motion for conditional certification of the collective and for court-authorized notice and **GRANT** the motion equitably tolling the FLSA claims.

## I. BACKGROUND

### A. Allegations

　　This is a putative class and collective action in which Fogg and Walker allege that the defendant, Clean Harbors Environmental Services, Inc. ("Clean

---

[1]　Certain citations to the record are abbreviated as follows:
　　DE = docket entry
　　Compl. = Amended Complaint (DE 13)

Harbors"), failed to pay potential class and collective members wages for time spent in meetings or work performed off-the-clock, or overtime wages for time worked in excess of 40 hours per week. (Compl. ¶¶ 1–3). The class and collective members include "employees of Clean Harbors who worked at one of Clean Harbors' facilities." (*Id.* ¶ 24.)

Fogg and Walker allege that they performed substantial off-the-clock work without being paid. (*Id.* ¶ 18.) Allegedly, Clean Harbors also failed to accurately record the hours plaintiffs worked and managers often did not turn in time sheets, resulting in employees not being paid for their work. (*Id.*) At times, plaintiffs were not compensated for time spent in mandatory monthly training sessions, which lasted approximately two to three hours. (*Id.*)

As a result of Clean Harbors' alleged failure to pay plaintiffs for all hours worked, they claim violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*; the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a, *et seq.*, for failure to pay overtime wages; and the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34: 11-4.3, for failure to pay minimum wage.

### B. Procedural History

Fogg and Walker filed their motion to conditionally certify the collective and for court-authorized notice on August 2, 2021. (DE 22.) On August 5, 2021, the court stayed briefing on the motion pending the initial conference before Judge James B. Clark, originally scheduled for September 2, 2021, but held on October 28, 2021. (DE 31; DE 38.) Following the initial conference, Judge Clark permitted the parties to conduct limited pre-certification discovery by November 30, 2021; permitted Fogg and Walker to file a motion seeking to toll the statute of limitations for future opt-in plaintiffs by November 15, 2021; and set a briefing schedule for the conditional certification motion, with the final brief due by January 11, 2022. (DE 39.) The prior motion for conditional certification (DE 22) was administratively terminated and would be reinstated on November 15, 2021. (DE 39.) Fogg and Walker filed their brief addressing the propriety of tolling the potential opt-in plaintiffs' claims on November 17,

2021. (DE 48.) Fogg and Walker's motion for conditional certification was reinstated on November 23, 2021 (DE 49), and they filed a supplemental statement of facts in support of their motion for conditional certification on December 23, 2021 (DE 60). On January 24, 2022, Clean Harbors filed its oppositions to the motions for equitable tolling and for conditional certification. (DE 63; DE 65.) On February 14, 2022, Fogg and Walker filed their replies. (DE 69; DE 70.)

## II. DISCUSSION

### A. Conditional Certification and Notice

#### 1. FLSA Standard for Conditional Certification of Collective Action

"The FLSA establishes a federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract." *Reinig v. RBS Citizens, N.A.*, 912 F.3d 115, 123 n.1 (3d Cir. 2018) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 69 (2013)). "Under § 216(b), the so-called collective action provision of the FLSA, employees may 'bring a private cause of action on their own behalf and on behalf of other employees similarly situated for specified violations of the FLSA.'" *Id.* Being "similarly situated" means that members of a collective action are "subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 538 (3d Cir. 2012). Relevant factors pertinent to determining whether employees are "similarly situated" include "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 570 (D.N.J. 2014) (quoting *Zavala*, 691 F.3d at 536–37).

"Courts in our Circuit follow a two-step process for deciding whether an action may properly proceed as a collective action under the FLSA."[2] *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013). At the first stage, known as conditional certification, a plaintiff is required only to meet the "fairly lenient standard" of a "modest factual showing." *Id.* (quoting *Zavala*, 691 F.3d at 536 & n.4). "Under the modest factual showing standard, a plaintiff must produce some evidence, beyond pure speculation, of a factual nexus between the manner in which the employer's alleged policy affected her and the manner in which it affected other employees." *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 193 (3d Cir. 2011) *rev'd on other grounds*, 569 U.S. 66 (2013) (cleaned up).

A court's grant of conditional certification is an exercise of its "discretionary power, upheld in *Hoffmann-La Roche* [*v. Sperling*, 493 U.S. 165 (1989)] to facilitate the sending of notice to potential class members, and is neither necessary nor sufficient for the existence of a representative action under FLSA." *Symczyk*, 656 F.3d at 194 (internal quotation marks and citations omitted); *accord Symczyk*, 569 U.S. at 74–75. Upon the Court's preliminary determination that the plaintiffs have successfully produced some evidence of similarly situated employees, notice of the suit is sent to this class of employees, and they may join the action by returning a signed consent form to the court. *Camesi*, 729 F.3d at 242–43 (citing 29 U.S.C. § 216(b)); *accord Symczyk*, 569 U.S. at 74–75.

---

[2]   Clean Harbors asks this Court to apply an alternative one-step test used by the Fifth Circuit. (*See* DE 65 pp. 16–18 (citing *Swales v. KLLM Transp. Servs., LLC*, 985 F.3d 430 (5th Cir. 2021)). That request is denied, as the Third Circuit has unequivocally expressed its preference for the two-step process outlined in text, *supra*. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) ("This approach, which has been recognized by the Supreme Court and is widely accepted in most jurisdictions, is a two-step certification process."). I share that preference and would not adopt the one-step test, assuming I had the discretion to do so.

At the second step, final certification, plaintiffs must satisfy a preponderance of the evidence standard. *Zavala*, 691 F.3d at 537. In other words, plaintiffs will have to show that it is "more likely than not" that "plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs." *Id.* The second step occurs after discovery, at which point the record has sufficiently developed and the court may determine whether each opt-in plaintiff is similarly situated to the named plaintiff. *Camesi*, 729 F.3d at 243.

### 2. Analysis

We are at step one of that two-step process. Fogg and Walker seek to conditionally certify a collective of "current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities in the United States, at any time beginning March 31, 2018 until the resolution of this action" and who "perform the various recycling, cleaning, and maintenance services for Defendant's customers." (DE 23 p. 7.)

In support of their motion for conditional certification, Fogg and Walker each provide a declaration and their deposition testimony. (*See* DE 24; DE 25; DE 60.) According to their declarations, Fogg and Walker are non-exempt employees of Clean Harbors who are paid on an hourly basis. (DE 24 ¶ 3; DE 25 ¶ 3.) Clean Harbors' time-keeping system consists of supervisory employees writing the hours worked by employees on a time sheet, then turning those time sheets in for payment. (DE 24 ¶ 5; DE 25 ¶ 5.) However, the individuals responsible for recording the employees' hours frequently fail to do so accurately, which results in employees being paid for less hours than expected. (DE 24 ¶ 6; DE 25 ¶ 6.) This timekeeping system applies to Fogg, Walker, and other non-exempt employees. (DE 24 ¶ 6; DE 25 ¶ 6.)

In addition, Fogg and Walker testified that they are required to manually enter in a phone app all the hours they have worked. (DE 60-1 ("Fogg Dep.") 48:21–50:10; DE 60-2 ("Walker Dep.") 43:24–44:10.) Fogg and Walker have compared the hours shown in their phone apps with the hours shown in their paychecks and have noticed that they are not paid for all hours worked. (Fogg

5

Dep. 64:19–23; Walker Dep. 35:4–21.) When Fogg and Walker realize they are missing hours, they will contact payroll, but payroll does not always correct the issues. (Fogg Dep. 65:6–24; 69:6–25; Walker Dep. 32:22–33:4; 35:4–36:19.)

Fogg and Walker also state in their declarations that Clean Harbors required them to attend mandatory training sessions. (DE 24 ¶ 7; DE 25 ¶ 7.) During the COVID-19 pandemic, Clean Harbors allowed employees to complete the mandatory training on their home computers, although employees could also complete the training at a Clean Harbors facility. (DE 24 ¶ 7; DE 25 ¶ 7.) Each training session lasted thirty minutes or longer and, on average, totaled about two hours per month. (DE 24 ¶ 7; DE 25 ¶ 7.) However, these mandatory training sessions are usually uncompensated. (DE 24 ¶ 7; DE 25 ¶ 7.)

Fogg and Walker state that the facts and circumstances related in their declarations "apply equally to other non-exempt hourly-paid employees" based on their observations and interactions with other workers during their employment with Clean Harbors. (DE 24 ¶ 10; DE 25 ¶ 10.) Based on their experience working at Clean Harbors, Fogg and Walker believe that "many other workers would be interested in making a claim to recover their unpaid wages if given the opportunity and if they were informed that Clean Harbors could not do anything to retaliate against them for exercising their statutory rights." (DE 24 ¶ 11; DE 25 ¶ 11.)

This evidence satisfies plaintiffs' modest burden at this, the first stage of conditional certification.[3] In opposition, Clean Harbors seeks to litigate the merits based on the limited discovery that occurred prior to plaintiffs' motion. Specifically, Clean Harbors attempts to characterize the policies at issue differently than plaintiffs, distinguish the alleged violations as too individualized to be resolvable as a collective action, and limit the time covered

---

[3] The Court notes Clean Harbors' argument regarding inadmissible hearsay in plaintiffs' declarations. (*See* DE 65 pp. 21–23.) The Court need not reach this argument because it finds that, even if it disregards the hearsay statements, plaintiffs have satisfied their burden for conditional certification.

by the conditional certification to February 2020.[4] (*See* DE 65 pp. 23–27, 30–33.) I decline to engage in such an analysis at this stage. *See Goodman v. Burlington Coat Factory*, No. 11-cv-4395, 2012 WL 5944000, at *6 (D.N.J. Nov. 20, 2012) ("[A]t this stage, the Court must refrain from addressing the merits of Plaintiffs' claim and making credibility determinations. Rather, at the second stage of collective action certification, the Court will consider the individual differences among [those] who actually opt in, as the Plaintiff must prove by a preponderance of the evidence that the actual members of the proposed collective action are similarly situated.").

Therefore, subject to the jurisdictional limitation discussed below, Fogg and Walker's motion to conditionally certify the collective is granted.

### 3. Jurisdictional Limitation

Clean Harbors asserts in its opposition that this Court cannot conditionally certify a nationwide collective because it does not have general jurisdiction over Clean Harbors. (DE 65 pp. 13–16.) According to Clean Harbors, because it is only subject to specific jurisdiction in New Jersey, conditional certification must be limited to opt-in plaintiffs employed by Clean Harbors in New Jersey. Here, Clean Harbors relies on *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773, 1779 (2017) and *Fischer v. Federal Express Corporation*, 509 F. Supp. 3d 275 (E.D. Pa. 2020).

In *Bristol-Myers Squibb Co.*, a large group of plaintiffs filed multiple lawsuits in California state court against Bristol-Myers Squibb Co. ("BMS") alleging that a drug marketed and sold by BMS had damaged their health. 137 S. Ct. at 1778. Most of the plaintiffs were not residents of California, had not obtained the drug within California, and were not treated for their injuries in California. *Id.* BMS moved to quash service of the summons in relation to the nonresidents' claims for lack of personal jurisdiction. *Id.* Because BMS was

---

[4]   Clean Harbors also challenges plaintiffs' request to conditionally certify a nationwide collective, which I will address in Section II.A.3. (*See* DE 65 pp. 28–29.)

incorporated in Delaware and headquartered in New York, it was not subject to general jurisdiction in California. *Id.* at 1777–78. Employing a "sliding scale approach," the California Supreme Court concluded that it could exercise specific jurisdiction over the nonresident claims against BMS because "the claims of the nonresidents were similar in several ways to the claims of the California residents." *Id.* at 1778–79.

The United States Supreme Court reversed. The Court stated that specific jurisdiction requires "a connection between the forum and the specific claims at issue." *Id.* at 1781. "The mere fact that *other* plaintiffs . . . allegedly sustained the same injuries as did the nonresidents . . . does not allow the State to assert specific jurisdiction over the nonresidents' claims." *Id.* Therefore, the California court could not assert specific jurisdiction over the nonresidents' claims. *Id.* at 1782.

Thereafter, a split of authority developed as to whether, in FLSA collective actions, *Bristol-Myers Squibb Co.* precluded federal courts from exercising specific jurisdiction over claims by opt-in plaintiffs who had worked outside of the forum state. *See Fischer*, 509 F. Supp. 3d at 286. When presented with this issue, the Eastern District of Pennsylvania concluded that FLSA opt-in plaintiffs are subject to the jurisdictional limitations of *Bristol-Myers Squibb Co. Id.* at 287. In *Fischer*, the plaintiffs filed a complaint in the Eastern District of Pennsylvania alleging that they were misclassified as exempt employees and were not paid overtime wages in violation of the FLSA. *Id.* at 280. The plaintiffs moved to conditionally certify a nationwide collective of similarly situated employees. *Id.* In opposition, the defendants argued that the court lacked personal jurisdiction over the claims asserted by employees who worked outside of the state, and therefore was constrained to limit the conditional certification class to persons employed in Pennsylvania. *Id.* at 284.

The district court held that, because the FLSA does not authorize nationwide service of process, it must follow the personal jurisdiction rules applicable to the state court, including the requirements in *Bristol-Myers*

8

*Squibb Co. Id.* at 285. Therefore, a plaintiff seeking to certify a nationwide collective under the FLSA must file suit where the defendant is subject to general jurisdiction. *Id.* at 288. If the court is exercising specific jurisdiction, it may only certify a collective of those plaintiffs who claim they have suffered harm within the forum state. *Id.* at 291. The district court found that it did not have general jurisdiction over the defendants; therefore, it certified a collective consisting only of individuals employed in Pennsylvania. *Id.*

Fogg and Walker ask this Court to reject Clean Harbors' position and hold that *Bristol-Myers Squibb Co.* does not prohibit the conditional certification of a nationwide collective in this case. They direct this Court to *Waters v. Day & Zimmermann NPS, Inc.*, 23 F.4th 84 (1st Cir. 2022), wherein the First Circuit rejected arguments akin to those raised by Clean Harbors and recognized that "excluding nonresident plaintiffs runs counter to the purpose of the FLSA." (DE 70 p. 13.)

After the parties fully briefed their positions, however, the United States Court of Appeals for the Third Circuit rendered its opinion affirming the district court's decision in *Fischer*. Citing and rejecting *Waters,* the Third Circuit held that the class would necessarily be limited to those persons asserting claims that satisfy the Fourteenth Amendment test of minimum contacts with the forum state:

> where the basis of personal jurisdiction in an FLSA collective action in a federal court is specific personal jurisdiction established by serving process according to Federal Rule of Civil Procedure 4(k)(1)(A), every plaintiff who seeks to opt in to the suit must demonstrate his or her claim arises out of or relates to the defendant's minimum contacts with the forum state.

*Fischer v. Fed. Express Corp.*, 42 F.4th 366, 370–71 (3d Cir. 2022).[5] The Third Circuit also noted that potential plaintiffs still maintain the ability to file their nationwide collective actions in the court that can exercise general jurisdiction

---

[5] Clean Harbors alerted the Court of the *Fischer* decision by filing a notice of supplemental authority. (DE 83.) Plaintiffs did not file a response.

9

over the employer. *Id.* at 388. I am bound by the Third Circuit's precedent and therefore must apply the jurisdictional limitation in *Fischer* to this case. *See, e.g., Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 867 (3d Cir. 1984).

A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020).

The parties do not dispute that this Court's personal jurisdiction over Clean Harbors is based on specific jurisdiction or that Clean Harbors is not subject to general jurisdiction in New Jersey.[6] The issue as they present it is whether this Court may conditionally certify a nationwide collective when Clean Harbors is subject only to specific jurisdiction in this state. Under *Fischer*, I

---

[6] For completeness, I will briefly conduct the personal jurisdiction analysis that no doubt underlies the parties' failure to press the point.

A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (cleaned up). A corporation is "at home" at least, and usually only, where it is incorporated or has its principal place of business. *Id.* (citation omitted). Clean Harbors is incorporated in and maintains its principal place of business in Massachusetts. (Compl. ¶ 9; DE 66 ¶ 3.) Plaintiffs make no argument that Clean Harbors is otherwise "at home" in New Jersey. Therefore, Clean Harbors is not subject to the general jurisdiction of this state.

A court may exercise specific jurisdiction when the defendant has sufficient contacts with the forum and plaintiff's claims "arise out of or relate to" those contacts. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025, (2021) (citation omitted). Here, Fogg and Walker's claims arise out of their employment at a Clean Harbors facility in New Jersey. That is sufficient to satisfy specific jurisdiction. *See, e.g., Conte v. Promethean Inc.*, No. 21-cv-20490, 2022 WL 4596727, at *9 (D.N.J. Sept. 30, 2022) (holding that, because the employer conducted business in New Jersey and its business activity in the state directly related to the plaintiff's claims, the employer had sufficient contacts with New Jersey such that the court's exercise of specific jurisdiction comported with "traditional notions of fair play and substantial justice").

10

conclude that it cannot. Here, in-state employment is a good proxy for specific jurisdiction. It is not inconceivable that, under some specific circumstances, an out-of-state employee's claim might invoke specific jurisdiction, but here there is no allegation or evidence to that effect. Plaintiffs provide nothing to suggest that the potential claim of any out-of-state employee arises from or relates to Clean Harbors' minimum contacts with New Jersey. *See Symczyk*, 656 F.3d at 193 (requiring plaintiff to provide some evidence, beyond pure speculation, to support conditional certification).

Conditional certification is therefore limited to a class or collective consisting of those opt-in plaintiffs who worked for Clean Harbors in New Jersey.

\* \* \*

For the reasons stated above, the Court conditionally certifies a collective of current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities in New Jersey, and performed various recycling, cleaning, and maintenance services for Clean Harbors' customers, at any time from March 31, 2018, until the resolution of this action.

### 4. Court-Authorized Notice

District courts have discretion to facilitate and oversee the sending of notice to putative members of the collective. *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 224 (3d Cir. 2016) (citing *Zavala*, 691 F.3d at 536; *Hoffman-La Roche*, 493 U.S. 165). Plaintiffs ask this Court to authorize the dissemination of notice via regular mail, email, text message, reminder postcard, and posting in Clean Harbors' facilities in common break room areas. (DE 23 pp. 13–14.) Plaintiffs also ask for an opt-in period of ninety days, with a reminder postcard to be sent halfway through that period. (*Id.* p. 13.) Finally, plaintiffs seek a court order directing Clean Harbors to produce a computer-readable list of putative collective members' names; dates of employment; last known addresses, phone numbers, and email addresses; and "other identifying

11

information for skip-trace search purposes in the event the last known contact information is no longer accurate." (*Id.* p. 14.)

Clean Harbors opposes the requested methods for dissemination of notice beyond regular mail. (DE 65 pp. 35–39.) Clean Harbors also asserts that plaintiffs' request for the names and contact information for putative collective members is premature and "constitutes an unjustified intrusion into the privacy of non-parties." (DE 65 pp. 34–35.) Clean Harbors does not offer any opposition to the length of the opt-in period.

Courts in this district frequently permit notice by both regular mail and electronic means.[7] *See, e.g., Gilbertson v. J. Givoo Consultants I, Inc.*, No. 20-cv-6991, 2021 WL 689114, at *2 (D.N.J. Feb. 23, 2021) (permitting notice by mail, email, and text message) (collecting cases). Reminder notices are also "regularly permitted in this Circuit." *Id.* at *2 (collecting cases). Additionally, the court may direct defendants to produce the contact information of potential opt-in plaintiffs. *See, e.g., Covachuela v. Jersey Firestop, LLC*, No. 20-cv-8806, 2021 WL 1326985, at *4 (D.N.J. Apr. 9, 2021) (requiring defendant provide a computer-readable list of names, titles, dates of employment, last known mailing addresses, telephone numbers, and email addresses); *Pearsall-Dineen v. Freedom Mortg. Corp.*, 27 F. Supp. 3d 567, 574 (D.N.J. 2014) (requiring defendant provide the potential members' names, last known addresses, email addresses, employee identification numbers, and dates of employment).

I will approve the following conditions for dissemination of the notice. Plaintiffs are permitted to send the notice to potential opt-in plaintiffs via mail, email, and text message, and may send a reminder notice by the same means approximately halfway through the ninety-day notice period. Clean Harbors is required to permit and not interfere with the posting of the notice in a conspicuous location in common break room areas at each of its New Jersey

---

[7] As an aside, the Court must observe that the status of regular mail as the default method of communication has eroded as electronic communication has increasingly become the norm. Neither, however, has wholly supplanted the other.

12

facilities. *See Gervasio v. Wawa Inc.*, No. 17-cv-245, 2018 WL 385189, at *7 (D.N.J. Jan. 11, 2018) (ordering notice be posted at defendant's businesses). The opt-in period will last for ninety days, running from the date that notice is first sent. Within ten days after the date of this opinion, Clean Harbors shall provide plaintiffs' counsel with a computer-readable list of putative collective members' names, dates of employment, and last known addresses, phone numbers, and personal email addresses.

There is an additional objection. Clean Harbors asserts that the content of Fogg and Walker's proposed notices is misleading for multiple reasons. (*See* DE 65 pp. 35–36; DE 23 Exs. 1–5.) Clean Harbors asks the Court to direct the parties to meet and confer and agree upon proposed form notices. (DE 65 p. 34.) Although Fogg and Walker maintain that their proposed notices are proper, they are not opposed to a court-ordered meet-and-confer. (DE 70 p. 14.) I will order the parties to confer in good faith with the object of reaching agreement as to the content of the proposed notices. The parties shall submit the final proposed notices, along with any remaining objections, to the Court for review and approval within thirty days after the date of this opinion.

## B. Equitable Tolling

### 1. The FLSA and the Standard for Equitable Tolling

Fogg and Walker ask this Court to equitably toll the limitations period for potential opt-in plaintiffs' FLSA claims from the date on which Fogg and Walker first filed their motion for conditional certification (August 2, 2021) until ten days after the Court rules on the motion. (DE 48 p. 10.)

An FLSA claim must be commenced within two years after accrual (three years in the case of a willful violation). 29 U.S.C. § 255(a).[8] A named plaintiff's claim is deemed commenced on the date that the collective action complaint is

---

[8] "Any action commenced . . . under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a).

filed. An opt-in plaintiff's claim, by contrast, is commenced only later, when written consent is filed. *Id.* § 256(a)–(b). That delay potentially creates a trap for opt-in plaintiffs: an opt-in's FLSA claim may become untimely prior to their having received court-authorized notice, because the filing of the collective action complaint has no automatic tolling effect as to their claims. Opt-in plaintiffs' FLSA claims are therefore particularly vulnerable to the running of the statute of limitations where, as here, motions for conditional certification and notice remain undecided for a significant period. Hence the application here for equitable tolling of opt-ins' claims.

Ordinarily, the statute of limitations begins to run "once [the] events satisfying all the elements of a cause of action have taken place." *William A. Graham Co. v. Haughey*, 646 F.3d 138, 147 (3d Cir. 2011). "There exist, however, various statutory and judge-made rules that operate to toll the running of the limitations period—that is, 'to stop its running'; 'to abate' it; or '[t]o suspend or interrupt' it." *Id.* (internal citations omitted). One of those judge-made rules, equitable tolling, "can rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos v. United States*, 559 F.3d 189, 197 (3d Cir. 2009) (citing *Seitzinger v. Reading Hosp. & Med. Ctr.*, 165 F.3d 236, 240 (3d Cir. 1999)).

Under the usual rules of equitable tolling, a plaintiff must establish two elements: "(1) that [plaintiff] has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in [plaintiff's] way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). While equitable tolling is an "extraordinary" remedy to be used "only sparingly," *Santos*, 559 F.3d at 197, tolling relief has been found proper in a number of situations, *see, e.g.*, *Seitzinger*, 165 F.3d at 240 (tolling may be appropriate "when a claimant received inadequate notice of her right to file suit, where a motion for appointment of counsel is pending, or where the court has misled the plaintiff into believing that she had done everything required of her"). Whether a statute

of limitations should be tolled requires a case-specific inquiry into what is fair and in the interests of justice. *See Miller v. New Jersey State Dep't of Corr.*, 145 F.3d 616, 618 (3d Cir. 1988) (equitable tolling is proper when the "principles of equity would make [the] rigid application [of a limitation period] unfair") (alterations in original); *Jones v. Morton*, 195 F.3d 153, 159 (3d Cir. 1999) ("In the final analysis . . . 'a statute of limitations should be tolled only in the rare situation where equitable tolling is demanded by sound legal principles as well as the interests of justice.'") (quoting *United States v. Midgley*, 142 F.3d 174, 179 (3d Cir. 1998)).

### 2. Analysis

Under the circumstances of this case, the conditional certification motion's *sub judice* status warrants equitable tolling of the statute of limitations. About eighteen months have passed since Fogg and Walker filed their motion for conditional certification, and about one year has passed since the motion was fully briefed. Several circumstances contributed to that delay, including that the Court stayed the motion pending the initial status conference (DE 31), the Court rescheduled the initial status conference twice (DE 35; DE 38), the Court administratively terminated and reinstated the motion (DE 39; DE 49), the parties conducted limited pre-certification discovery (DE 39), and the parties requested multiple extensions of the briefing schedule (DE 53; DE 62). The Court must shoulder its own share of the responsibility for the delay. I do not find any indication of dilatory conduct by Fogg or Walker, and of course no part of the delay is attributable to the potential opt-in plaintiffs whose rights are at stake.

I addressed a similar situation in *DePalma v. Scotts Company, LLC*, and concluded that even a one-year *sub judice* delay was long enough to prejudice absent parties' rights. No. 13-7740, 2017 WL 1243134, *6 (D.N.J. Jan. 20, 2017). *See also Ornelas v. Hooper Holmes, Inc.*, No. 12-cv-3106, 2014 WL 7051868 (D.N.J. Dec. 12, 2014) (granting motion for equitable tolling in an FLSA collective action where the *sub judice* delay of the conditional certification

15

motion was approximately eighteen months). I recognized that, because the statute of limitations in an FLSA action is, generally, a relatively short two years, a delay of even one year could gravely prejudice the rights of the absent opt-in plaintiffs. *DePalma*, 2017 WL 1243134 at *5.

I find that the same concerns noted in *DePalma* are present here. Whether the *sub judice* delay is calculated from the date on which Fogg and Walker filed their motion for conditional certification or the date on which the motion was fully briefed, the delay is long enough to prejudice the opt-in plaintiffs' rights. I also find that Clean Harbors will not be prejudiced by the tolling period because it has known that Fogg and Walker intended to join other plaintiffs in this action since the time it received the collective action complaint. *See id.* at *8.

Additionally, Clean Harbors contends that a decision from this Court equitably tolling the statute of limitations for potential opt-ins would be an impermissible advisory opinion because the order will only affect "hypothetical plaintiffs" who "are not yet, and may never be, parties to this case." (DE 63 p. 8.) For support, Clean Harbors relies on my prior decision, *Thompson v Real Estate Mortgage Network, Inc.*, No. 11-1494, 2019 WL 2636307 (D.N.J. June 26, 2019), wherein I declined to grant the plaintiff's motion for equitable tolling of the potential opt-ins' FLSA claims because such a decision would be an advisory opinion. In *Thompson,* however, I had not yet ruled on the motion for conditional certification. Because the very existence of a collective remained unsettled, the possibility of other opt-ins joining the collective was doubly speculative. *See id.* at *14. Not so here, as I have conditionally approved collective treatment of the case.

Therefore, the statute of limitations for the potential opt-in plaintiffs' FLSA claims shall be equitably tolled from August 2, 2021, until thirty days after the date of this opinion.[9]

## III.   CONCLUSION

For the reasons set forth above, Fogg and Walker's motions (DE 22; DE 48) to conditionally certify the collective and to equitably toll the statute of limitations are granted. A separate order will issue.

Dated: February 7, 2023

/s/ Kevin McNulty

**Hon. Kevin McNulty**
**United States District Judge**

---

[9]   I have extended plaintiffs' request for ten days' grace in order to reflect my orders regarding the procedures for final settlement of the content of the notices and discovery of contact information.

17