**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **OREESE FOGG and KYLE WALKER, et al.,**<br><br>*Plaintiffs*,<br><br>v.<br><br>**CLEAN HARBORS ENVIRONMENTAL SERVICES, INC.,**<br><br>*Defendant*. | **Civil Action No. 21-07626**<br><br>**OPINION** |

**ARLEO, UNITED STATES DISTRICT JUDGE**

 **THIS MATTER** comes before the Court by way of Plaintiffs Oreese Fogg's ("Fogg") and Kyle Walker's ("Walker," and with Fogg, "Named Plaintiffs") Motion for Class Certification pursuant to Federal Rule of Civil Procedure 23 ("Rule 23"). ECF No. 179; <u>see also</u> ECF No. 180 ("Certification Motion"). Defendant Clean Harbors Environmental Services, Inc. ("Clean Harbors" or "Defendant") opposes the Motion, ECF No. 189, and further moves for decertification of the collective action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 <u>et seq.</u>, ECF No. 182; <u>see also</u> ECF No. 183 ("Decertification Motion"), that this Court conditionally certified on February 7, 2023, ECF No. 105 ("Conditional Certification Opinion"). Named Plaintiffs oppose the Decertification Motion. ECF No. 188.

 For the reasons set forth below, the Certification Motion is **GRANTED in part** and **DENIED in part**, and the Decertification Motion is **GRANTED in part** and **DENIED in part**.

**I. FACTUAL BACKGROUND**

 Named Plaintiffs have brought this putative class and collective action against Defendant, alleging violations of the FLSA, the New Jersey Wage and Hour Law, N.J.S.A. 34:ll–56a, <u>et seq.</u> ("NJWHL"), and the New Jersey Wage Payment Law, N.J.S.A. 34:11-4.3 ("NJWPL"). <u>See</u> Am.

Compl. ¶¶ 40–66, ECF No. 13.  For purposes of their Certification Motion, Named Plaintiffs purport to represent a class of current and former non-exempt,[1] hourly-paid employees of Defendant who worked at one of Clean Harbors' New Jersey facilities from March 1, 2019,[2] to the anticipated resolution of this present action ("Class Plaintiffs," and with Opt-in Plaintiffs, "Plaintiffs").  See Cert. Mot. at 1; see also Am. Compl. ¶ 24.  For both the collective and class, Named Plaintiffs claim that Defendant has unlawfully failed to pay Plaintiffs full wages for time spent in meetings, trainings, and/or for work performed off-the-clock, which may include overtime compensation for work performed in excess of forty hours per week.  Am. Compl. ¶¶ 1–3, 40–66.

Defendant is a provider of environmental and industrial services, including "end-to-end hazardous waste management, emergency spill response, industrial cleaning and maintenance, and recycling services."  Am. Compl. ¶ 13.  Defendant operates several facilities throughout the United States, including at least two in New Jersey.  See Def.'s Opp'n to Cert. Mot., Ex. A ("McKnight Decl.") ¶ 5.  Defendant has consistently employed over one hundred non-exempt field service employees throughout New Jersey in every year since 2018.  See id., Ex. B ("Barrett Dep. Tr.") at 60:22–62:3; see also McKnight Decl. ¶ 5 ("In total, over the last three years [as of January 24, 2022], [Defendant] has employed approximately . . . 187 non-exempt drivers and technicians in its New Jersey facilities.").  A field service employee is a category of employee that broadly includes supervisors, foremen, field technicians, and environmental technicians.  See Barrett Dep. Tr. at 51:10–52:1.

---

[1] Defendant's "Employee Compensation Policy" defines "Non-Exempt (Hourly) Employees" as those employees who are "entitled to overtime pay for all hours worked beyond 40 hours in a work week, or as otherwise required by applicable federal, state, provincial or local law."  Def.'s Opp'n to Cert. Mot., Ex. F.

[2] As discussed below, Named Plaintiffs were previously granted conditional certification of a collective comprised of "current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities in the United States, at any time beginning March 31, 2018 until the resolution of this action" and who "perform[ed] the various recycling, cleaning, and maintenance services for Defendant's customers" ("Opt-in Plaintiffs"). Conditional Cert. Op. at 5, 7.

Named Plaintiffs were hired by Defendant in February 2020 and worked at Defendant's facility located in South Plainfield, New Jersey.  See Def.'s Opp'n to Cert. Mot., Ex. C ("Def.'s Interrogatory Responses") at Interrogatory No. 1.  From approximately February 2020 to March 2022, Fogg worked as a "field service employee (specifically an equipment operator)," which involved, among other things, "cleaning Clean Harbors' shop and company equipment, performing recycling services, [and conducting] industrial and environmental/hazardous cleaning and maintenance services for Clean Harbors' customers."  Cert. Mot., Ex. B[3] at 1 ¶¶ 2–3.

From approximately February 2020 to April 2023, Walker worked as an "equipment operator/field technician," which involved, among other things, performing "recycling services, industrial and environmental/hazardous cleaning services, and maintenance services for Clean Harbors' customers."[4]  See id. at 6 ¶¶ 2–3.  Named Plaintiffs are both paid hourly, with Fogg earning approximately $23.00 per hour and Walker earning approximately $20.00 per hour.  See Am. Compl. ¶ 15.  In general, Plaintiffs are expected to work twelve-hour shifts, five-to-six days per week.  See id. ¶ 16.

Plaintiffs are required to abide by Defendant's timekeeping practices and policies. McKnight Decl. ¶ 7.  Defendant's compensation policy requires it to pay its non-exempt employees in accordance with federal, state, and local wage and hour laws.  See Def.'s Opp'n to Cert. Mot., Ex. K ("Def.'s Compensation Policy") at 1.

---

[3] Exhibit B to the Certification Motion contains both a Declaration of Oreese Fogg and a Declaration of Kyle Walker. Therefore, the Court is unable to define Exhibit B as either declaration.

[4] Defendant posits that Fogg worked as a "non-exempt Class A Driver," which required him to "complete disposal runs by collecting and transporting hazardous waste from cleanup sites to landfill and disposal facilities," and that Walker was hired as a "non-exempt Class B Driver," but was transferred to a "technician" role that required "performing decontamination work and hazardous waste cleanup."  Def.'s Opp'n to Cert. Mot. at 3.  For purposes of the forthcoming analysis, the Court finds this distinction immaterial.

Defendant uses different timekeeping systems to track Plaintiffs' time spent working for billing and payment purposes. First, Defendant requires Plaintiffs to record and submit time spent working through software accessible by a mobile phone or desktop computer ("Time Card").[5] See, e.g., Barrett Dep. Tr. at 70:2–21; McKnight Decl. ¶¶ 7–13. Second, Plaintiffs complete "Shop Sheets," which tracks time spent working that is not billable to Defendant's customers. See Cert. Mot., Ex. B at 2 ¶ 7; see also Def.'s Opp'n to Cert. Mot., Ex. J ("Shop Sheet Policy"); id., Ex. G ("Fogg Dep. Tr.") at 85:24–86:15. Third, certain supervisory employees complete "Multi-Task Worksheets," which track billable time and/or equipment usage billable to Defendant's customers. See Barrett Dep. Tr. at 113:1–16; Fogg Dep. Tr. at 52:15–54:1. Fourth, Plaintiffs who are classified as drivers complete "Bulk Load Worksheets," which track, among other things, time spent driving. See, e.g., Fogg Dep. Tr. at 44:7–46:12.

According to Defendant, Plaintiffs received mandatory electronic training on its timekeeping policy, which included training on tracking time via Time Card and tracking time via certain paper forms. See Def.'s Opp'n to Cert. Mot., Ex. H ("McKnight Dep. Tr.") at 73:16–74:25. As a result, Plaintiffs "have complete control over their time entries." See Def.'s Opp'n to Cert. Mot. at 6 (citing, e.g., Barrett Dep. Tr. at 235:23–236:3). Defendant claims to send "employees reminder emails every Monday to review and close their time entries for the prior workweek." Id. (citing Fogg Dep. Tr. at 47:7–48:4). Named Plaintiffs claim, however, that Plaintiffs "received

---

[5] Defendant's second Rule 30(b)(6) witness designee, Keinna McKnight, declared that one of Defendant's New Jersey facilities utilizes "Time Card," which is timekeeping software accessible through a non-exempt, hourly-paid employee's mobile phone or desktop computer. See McKnight Decl. ¶¶ 9–11. McKnight makes no mention of the timekeeping system at Defendant's other New Jersey facility. However, McKnight declared that most of Defendant's other facilities utilize "Kronos," which is a timekeeping system that requires non-exempt, hourly-paid employees to swipe an identification badge at the beginning of their respective shifts. See id. ¶¶12–13. This notwithstanding, Defendant's counsel represents to the Court that it is "undisputed" that Defendant's "policy requires all non-exempt employees to record their time worked daily (on or off site) via an app ([Time Card]) on their cell phones." See Def.'s Opp'n to Cert. Mot. at 4. Given counsel's obligation to be truthful with the Court, the Court will assume that both of Defendant's New Jersey facilities at issue utilize Time Card.

4

little to no training on how to record their time.  [And t]o the extent they did, it was generalized and brushed over, and they were not trained on how to record at-home trainings."  <u>See</u> ECF No. 190 ("Pls.' Reply for Cert.") at 6–7; <u>see also</u> ECF No. 188 ("Pls.' Opp'n to Decertification Mot."), Ex. G at 2–4, 17–19, 22–24, 31–33, 42–44, 52–54, 57–59 (containing Opt-in Plaintiffs' recollection of receiving "brief[]" to no training on how to record time spent working).

Defendant's timekeeping practices and policies provide a safeguard for Plaintiffs who believe they were paid less than the number of hours they worked.  Plaintiffs are instructed to report any suspected discrepancies between hours submitted and payment received to Defendant's Human Resources Department.  <u>See</u> Def.'s Compensation Policy at 5.  If an employee's complaint is valid, Defendant creates a "Reconciliation Report," which is used "to track hours missing from an employee's time records that [Defendant] corrected or reconciled."  Def.'s Opp'n to Cert. Mot. at 6 (citing McKnight Dep. Tr. at 21:16–22:1 ("We don't have reconciliation reports for every pay period, it is only when we are trying to correct something that was missed.")).

As a result, a Reconciliation Report is "the most accurate document" for determining the number of hours an employee is paid for.  Barrett Dep. Tr. at 90:4–11.  But a Reconciliation Report is only created if a discrepancy exists between an employee's payment and hours worked.  <u>See</u> McKnight Dep. Tr. at 21:24–22:1.  There is no "safeguard" to capture overtime worked that is not submitted as hours worked.

Defendant requires Plaintiffs to attend "mandatory training sessions," which occur at least once per month and last anywhere between approximately thirty minutes to several hours.  Am. Compl. ¶ 18; <u>see also, e.g.</u>, Barrett Dep. Tr. at 96:21–97:5.  In order to remain employed and eligible for work, Defendant requires that Plaintiffs attend these trainings.  <u>See</u> <u>id.</u>  Such trainings include, without limitation, "HazMat procedures and regulations, bloodborne pathogen

awareness[,] various OSHA topics, and other work and safety related trainings."  Cert. Mot. at 5 (citing id., Ex. D ("Trainings List")).  Plaintiffs attend these trainings by using their mobile phone or a computer at either their respective residences or at one of Defendant's facilities.  See Am. Compl. ¶ 18; see also, e.g., Cert. Mot., Ex. C at 2–3 ¶ 7; id. at 10 ¶ 7.

Named Plaintiffs allege that Defendant's timekeeping policies and practices, as well as Defendant's mandatory training requirements, have caused and currently cause Plaintiffs to receive less compensation than that for which they are entitled to based on the number of hours they have worked.  First, Named Plaintiffs allege that Defendant does not always compensate Plaintiffs "for the time spent in these training sessions, especially when they are remote or virtual." Am. Compl. ¶ 18; Cert. Mot. at 5–7.  As a result, Defendant has deprived and continues to deprive Plaintiffs of overtime compensation for hours worked exceeding forty hours per week.  See id.; see also Am. Compl. ¶¶ 51–62.

In response, Defendant asserts that unpaid time spent training is a result of Plaintiffs' failure to record time spent training.  See Def.'s Opp'n to Cert. Mot. at 10–11; see also Shop Sheet Policy (providing that "[o]n a daily basis, direct employees must complete [Defendant's] shop sheet for any time that is not billable to customers.  The start and end times must be recorded for the appropriate category.").  But Defendant is undoubtedly aware that trainings occur, and that time spent training is not submitted, since they require Plaintiffs' attendance and can readily ascertain whether such time goes uncompensated by reviewing its own records.  Moreover, Named Plaintiffs allege that Defendant informed its employees that attending trainings would go uncompensated, so there was no need to record or track time spent in trainings.  See Pls.' Reply for Cert. at 6 & n.3.

Second, Named Plaintiffs allege that Defendant "fail[ed] to accurately record the actual time worked by Plaintiffs" by incorrectly accounting for hours worked.  See Am. Compl. ¶ 18; Cert. Mot. at 8.  Specifically, Defendant intentionally underreports Plaintiffs' hours "to comply with [Defendant's] client billing arrangement," because Defendant only receives payment for time billed in compliance with a preexisting contractual arrangement.  See Cert. Mot. at 8.  Named Plaintiffs point to few examples of when this underreporting might occur, like when Plaintiffs are physically at a worksite, but cannot begin working due to a weather delay.  See id.  Relatedly, Named Plaintiffs also allege that Defendant "often" fails to submit Plaintiffs' time sheets.  See id.; Am. Compl. ¶ 18.  As a result of these payment and billing practices and policies, Plaintiffs are allegedly denied overtime compensation for work performed in excess of forty hours per week. See, e.g., Am. Compl. ¶¶ 1–3, 18; Cert. Mot. at 4–9.

## II.    PROCEDURAL HISTORY

On March 31, 2021, Plaintiff Fogg filed his original Complaint in the United States District Court for the District of New Jersey on behalf of himself and all others similarly situated against Defendant.  See ECF No. 1.  In it, Fogg alleged that Defendant has violated and continues to violate the FLSA, NJWHL, and NJWPL by failing to compensate its non-exempt employees "of all wages due, including minimum wage, overtime, work performed off-the-clock, and expense reimbursement."  See ECF No. 1 ¶¶ 1–3.  On July 16, 2021, Named Plaintiffs filed the operative Amended Complaint, adding Plaintiff Walker and reiterating the same causes of action as alleged in the original Complaint.  See Am. Compl. ¶¶ 1–3.

On August 2, 2021, Named Plaintiffs moved for conditional certification under 29 U.S.C. § 216(b) of the collective action and for court-authorized notice.  See ECF No. 22.  After limited

pre-certification discovery, the Court granted conditional certification for the purposes of collective action under FLSA a collective of

> current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities in New Jersey, and performed various recycling, cleaning, and maintenance services for Clean Harbors' customers, at any time from March 31, 2018, until the resolution of this action.

See Conditional Cert. Op. at 11.  The Court approved notice for the potential collective and ordered that such notice be sent via "mail, email, and text message," that the opt-in period for the class be set at ninety-days, and that the circulation of such notice may be followed up "by the same means approximately halfway through the ninety-day notice period."  See id. at 12–13.  The Court also ordered Defendant to produce to Plaintiffs' counsel "a computer-readable list of putative collective members' names, dates of employment, and last known addresses, phone numbers, and personal email addresses."  See id. at 13.

On March 3, 2023, Defendant produced the collective class list, which contained approximately 450 potential collective action members.  See, e.g., ECF No. 180.15.  On March 10, 2023, the Court approved the parties' joint proposed notices, see ECF Nos. 116 & 117, and notices were sent shortly thereafter, see ECF No. 118.  Between March 29, 2023, and June 27, 2023, approximately 155 potential class members filed opt-in consents for the FLSA collective action.  See ECF Nos. 119, 121–26, 129, 131–37, 139–41, 144, 146–48.  Since that time, several Opt-in Plaintiffs have withdrawn their consent, see, e.g., ECF Nos. 172–73, 176, 196, resulting in a collective action class that totals approximately 150 members.

On July 8, 2024, Named Plaintiffs moved for class certification under Federal Rule of Civil Procedure 23 for a class of

> [a]ll current and former non-exempt, hourly employees of Defendant Clean Harbors Environmental Services, Inc. . . . who worked at one of Defendant's

facilities in New Jersey at any time from March 31, 2019 until the resolution of this action.

ECF No. 179 at 1; Cert. Mot. at 1.  Simultaneously, Defendant moved to decertify the FLSA collective action.  ECF No. 182.

### III.    LEGAL STANDARD

#### A.    Rule 23 Class Actions

"In order to be certified, a class must satisfy the four requirements of Rule 23(a): (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions, 148 F.3d 283, 308–09 (3d Cir. 1998); see also Fed. R. Civ. P. 23(a).  Once those requirements are met, the Court considers whether the class can be maintained under one of the provisions of Rule 23(b).  See Ferreras v. Am. Airlines, Inc., 946 F.3d 178, 182–83 (3d Cir. 2019).  Here, Named Plaintiffs seek certification under Rule 23(b)(3), which allows for a class action where "questions of law or fact common to class members predominate over any questions affecting only individual members . . . [and] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The Third Circuit has also recognized an "implicit ascertainability requirement," Byrd v. Aaron's Inc., 784 F.3d 154, 163 (3d Cir. 2015), which the Court must consider "[p]rior to determining whether the requirements of Rule 23 have been met," Carney v. Goldman, No. 15-00260, 2018 WL 2441766, at *10 (D.N.J. May 30, 2018).  A class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." Byrd, 784 F.3d at 163 (internal citations and quotation marks omitted).  This ascertainability requirement must be demonstrated under the same "rigorous" standards provided for by Rule 23, which requires

a plaintiff to present "evidentiary support" that the proposed method of ascertaining a class will succeed.  See Carrera v. Bayer Corp., 727 F.3d 300, 306–07 (3d Cir. 2013).

A plaintiff "must affirmatively demonstrate" that Rule 23's requirements are satisfied, see Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011), by a preponderance of evidence, see In re Blood Reagents Antitrust Litig., 783 F.3d 183, 187 (3d Cir. 2015).  In deciding whether to certify a class, the Court's analysis frequently overlaps with "the merits of the plaintiff's underlying claim[s]," Dukes, 564 U.S. at 351, but the Court may consider the merits "only to the extent . . . that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied," Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 466 (2013).

### B.    FLSA Collective Actions

"The FLSA establishes federal minimum-wage, maximum-hour, and overtime guarantees that cannot be modified by contract."  Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 69 (2013).  Under § 216(b),[6] employees may "bring a private cause of action on their own behalf and on behalf of 'other employees similarly situated' for specified violations of the FLSA."  Id.  The FLSA accordingly "provides a vehicle for managing claims of multiple employees against a single employer." Halle v. W. Penn Allegheny Health Sys., Inc., 842 F.3d 215, 223 (3d Cir. 2016).

The term "similarly situated," however, is not defined by the FLSA or its supporting regulations.  See Ruffin v. Avis Budget Car Rental, LLC, No. 11-1069, 2014 WL 294675, at *2 (D.N.J. Jan. 27, 2014).  Instead, the process by which employees are determined to be similarly situated for purposes of an FLSA collective action has been a product of judicial creation.  See,

---

[6] Section 216(b) of the FLSA provides, in relevant part, that "[a]n action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought."  29 U.S.C. § 216(b).

e.g., Halle, 842 F.3d at 223–24.  Generally, courts have interpreted similarly situated to mean "that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA."  Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 538 (3d Cir. 2012).

The Third Circuit has endorsed a two-step process in determining whether a case may proceed as an FLSA collective action.  Zavala, 691 F.3d at 536.  At the first step, a court must determine whether plaintiffs make a "modest factual showing—something beyond mere speculation—to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members."  Halle, 842 F.3d at 224 (citing Zavala, 691 F.3d at 536 n.4).  If conditional certification is granted, notice is sent to potential members of the collective action.  As a result, putative collective action members can opt into the case pursuant to § 216(b).  Halle, 842 F.3d at 225.

This Court previously found this first standard satisfied and granted conditional certification on February 7, 2023.  See Conditional Cert. Op.  At the second stage, plaintiffs have the burden of demonstrating that the opt-in plaintiffs are similarly situated to them.  Halle, 842 F.3d at 226 (citing Zavala, 691 F.3d at 537).  The Third Circuit, along with most other Circuits, has adopted an ad-hoc approach to this analysis, "which considers all the relevant factors and makes a factual determination on a case-by-case basis."  Zavala, 691 F.3d at 536.  Courts will consider a variety of factors in coming to this determination, including, without limitation, "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment.  Plaintiffs may also be found dissimilar based on the existence of individualized defenses."  Id. at 536–37; see also Halle, 842 F.3d at 226 (requiring consideration of (1) "the factual and employment settings of the individual

11

plaintiffs"; (2) "the different defenses to which the plaintiffs may be subject on an individual basis"; and (3) "the degree of fairness and procedural impact of certifying the action as a collective action.").

Certification of a collective class is only appropriate if plaintiffs can satisfy the requisite level of proof by a preponderance of the evidence. <u>Zavala</u>, 691 F.3d at 537.

## IV.    ANALYSIS

### A.    Named Plaintiffs' Motion to Certify Under Rule 23

#### 1.    Claims to be Given Class Treatment Under Rule 23(c)(1)(B)

Before considering Rule 23(a) and Rule 23(b)(3), the Court must preliminarily address the claims to be given class treatment.  "An order that certifies a class action must define the class and the class claims, issues, or defenses . . . ."  Fed. R. Civ. P. 23(c)(1)(B).  Specifically, "the text of the order or an incorporated opinion must include (1) a readily discernible, clear, and precise statement of the parameters defining the class or classes to be certified, and (2) a readily discernible, clear, and complete list of the claims, issues, or defenses to be treated on a class basis." <u>Wachtel v. Guardian Life Ins. Co.</u>, 453 F.3d 179, 187–88  (3d Cir. 2006).

Named Plaintiffs seek class certification under Rule 23 based on two separate but related claims:[7]  Defendant's alleged policies and practices of (1) denying Class Plaintiffs overtime wages for time they spend in mandatory trainings in excess of forty hours per week (the "Training Claim"), and of (2) underpaying and/or denying Class Plaintiffs overtime wages for time they spend performing non-billable work as excluded under contract in excess of forty hours per week

---

[7] At this juncture, it is significant to note the difference between a legal claim and a legal theory.  A legal claim "is the set of operative facts that produce an assertable right in court and create an entitlement to a remedy." <u>St. Augustine Sch. v. Underly</u>, 78 F.4th 349, 352 (7th Cir. 2023).  A legal theory "is the vehicle for pursuing the claim; it may be based on any type of legal source, whether a constitution, statute, precedent, or administrative law." <u>Id.</u>; <u>see also</u> <u>Legal Theory</u>, Black's Law Dictionary (12th ed. 2024) (defining "legal theory" as "the principle under which a litigant proceeds, or on which a litigant bases its claims or defenses in a case").

(the "Non-Billable Claim").  See, e.g., Cert. Mot. at 17; Pls.' Reply for Cert. at 8.  These are two separate circumstances of fact that Named Plaintiffs assert in support of two legal theories: Defendant's violations of the NJWHL and NJWPL.  See Am. Compl. ¶¶ 1–3, 51–66.

Named Plaintiffs urge this Court, as an alternative to class certification of both claims, to certify either the Training Claim or the Non-Billable Claim as an issues class.  See Pls.' Reply for Cert. at 20.[8]

With this understanding, the Court will now address the implicit ascertainability requirement, Rule 23(a) requirements, and Rule 23(b)(3) requirements for class certification.

### 2.    Ascertainability

As previously noted, a class is ascertainable if: (1) it can be "defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition."  Byrd, 784 F.3d at 163 (internal citations and quotation marks omitted).

Here, Defendant does not challenge class certification on ascertainability grounds.  See generally Def.'s Opp'n to Cert. Mot.  The Court is satisfied that this requirement is met.  Named Plaintiffs seek to certify a class of all current and former non-exempt, hourly employees of Defendant who worked at one of Defendant's New Jersey facilities from March 31, 2019, to the anticipated resolution of this action.  ECF No. 179 at 1; Cert. Mot. at 1.  This proposed class can be defined with reference to objective criteria, since its membership is a question of fact, not law.  See, e.g., Bedoya v. Am. Eagle Express, Inc., No. 14-2811, 2022 WL 3443983, at *15 (D.N.J.

---

[8] Named Plaintiffs do not specify under which subsection of Rule 23 they are seeking certification in the alternative. However, Named Plaintiffs cite to Kalow & Springut, LLP v. Commence Corp., which discusses Rule 23(c)(4) and a district court's ability to "partially certify a class as to a single cause of action within a suit."  No. 07-3442, 2011 WL 3625853, at *3 (D.N.J. Aug. 15, 2011).  Therefore, the Court reads Named Plaintiffs' request in the alternative to be made under Rule 23(c)(4).

Aug. 17, 2022). Indeed, Defendant has already provided a list of putative collective action members, <u>see</u> Cert. Mot., Ex. O ("Collective Action List"), in response to the Court's Conditional Certification Opinion. Because the scope of Named Plaintiffs' class definition under Rule 23 is slightly broader than Named Plaintiffs' collective definition under the FLSA,[9] all Opt-in Plaintiffs would also be Class Plaintiffs. The admitted existence of employment records, <u>see</u> McKnight Dep. Tr. at 91:1–5, coupled with Defendant's previous production of a list of putative collective action members, <u>see</u> Collective Action List, confirms the existence of a reliable and administratively feasible mechanism for Defendant to determine Class Plaintiffs. Therefore, Named Plaintiffs have demonstrated by a preponderance of evidence that they can readily ascertain Defendant's employees who worked in one of Defendant's New Jersey facilities from March 31, 2019, to the present.

### 3.    Rule 23(a) Requirements

#### a.    Numerosity

Rule 23(a)(1)'s numerosity requirement is satisfied when the class is "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1); <u>see also</u> <u>Elias v. Ungar's Food Prods., Inc.</u>, 252 F.R.D. 233, 242 (D.N.J. 2008) ("To be certified, a class must be large enough in number to ensure that, for efficiency purposes, a class does not subject the defendants to multiple, similar lawsuits."). "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs

---

[9] Named Plaintiffs' collective definition narrows their class definition by only having it apply to "current and former non-exempt, hourly employees of Clean Harbors who worked at one of Clean Harbors' facilities in New Jersey, <u>and</u> <u>performed various recycling, cleaning, and maintenance services for Clean Harbors' customers.</u>" <u>See</u> Conditional Cert. Op. at 11 (emphasis added). Named Plaintiffs' class definition does not limit membership to employees who performed such services. <u>See</u> ECF No. 179 at 1; Cert. Mot. at 1. In addition, Named Plaintiffs' collective definition requests inclusion of employees who worked for Defendant from March 31, 2018, while their class definition requests inclusion of employees who worked for Defendant from March 31, 2019—a shorter time period for purposes of Rule 23 class certification. <u>Compare</u> Conditional Cert. Op. at 11, <u>with</u> ECF No. 179 at 1.

exceeds 40, the first prong of Rule 23(a) has been met." Stewart v. Abraham, 275 F.3d 220, 226–27 (3d Cir. 2001) (internal citations omitted). Therefore, Named Plaintiffs bear the burden of demonstrating by a preponderance of evidence "that there are in fact sufficiently numerous parties." Hayes v. Wal–Mart Stores, Inc., 725 F.3d 349, 357 (3d Cir. 2013) (alteration omitted); Stewart, 275 F.3d at 226–27.

Named Plaintiffs argue that they have sufficiently demonstrated satisfaction of Rule 23(a)(1)'s numerosity requirement because the Collective Action List contains several hundred members.[10] The Court agrees. Based on Defendant's own concessions, there are hundreds of potential Class Plaintiffs. See Barrett Dep. Tr. at 60:22–62:3 (providing testimony of Defendant's Rule 30(b)(6) witness describing hundreds of "hourly paid nonexempt field service employees" employed by Defendant in New Jersey between 2019 and 2023); Cert. Mot., Ex. N ("Morelli Decl.") ¶ 8 ("The putative Class in this action contains several hundred class members, who are ascertainable from Defendant's records."); Collective Action List (containing redacted list of "collective class list," which purportedly identifies "most, if not all, putative class members"). Accordingly, the numerosity requirement is satisfied.

### b.    Commonality

Rule 23(a)(2)'s commonality requirement is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The Third Circuit has described this requirement as "straightforward," explaining that "[t]he commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." In re Schering Plough Corp. ERISA Litig., 589 F.3d 585, 597 (3d Cir. 2009). Because the language

---

[10] In opposition, Defendant argues that by seeking conditional certification under FLSA, Plaintiffs have effectively conceded that joinder is practicable and thus numerosity is lacking. See Def.'s Opp'n to Cert. Mot. at 13–15. But this is not the law, and Defendant fails to provide any legal support for this proposition.

of Rule 23(a)(2) is "easy to misread, since [a]ny competently crafted class complaint literally raises common questions," the putative class must "generate common <u>answers</u> apt to drive the resolution of the litigation," as opposed to raising "common questions." <u>Dukes</u>, 564 U.S. at 349–50 (citation and internal quotation marks omitted).

But where a party seeks certification under Rule 23(b)(3), as here, "the commonality requirement 'is subsumed by the predominance requirement.'" <u>Danvers Motor Co., Inc. v. Ford Motor Co.</u>, 543 F.3d 141, 148 (3d Cir. 2008) (quoting <u>Georgine v. Amchem Prods., Inc.</u>, 83 F.3d 610, 627 (3d Cir. 1996)). Therefore, the Court will address Rule 23(a)(2)'s commonality requirement with its analysis of Rule 23(b)(3)'s predominance requirement. <u>See, e.g.</u>, <u>In re Ins. Brokerage Antitrust Litig.</u>, 579 F.3d 241, 266 (3d Cir. 2009) ("analyz[ing] the two factors together, with particular focus on the predominance requirement." (citation and internal quotation marks omitted)).

### c.    Typicality

Rule 23(a)(3)'s typicality requirement mandates Named Plaintiffs prove that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Unlike the Court's commonality analysis, which evaluates the sufficiency of the class itself, the typicality analysis evaluates the sufficiency of Named Plaintiffs. <u>See, e.g.</u>, <u>Baby Neal for & by Kanter v. Casey</u>, 43 F.3d 48, 56 (3d Cir. 1994).

In order to satisfy typicality, "(1) the claims of the class representative must be generally the same as those of the class in terms of both (a) the legal theory advanced and (b) the factual circumstances underlying that theory; (2) the class representative must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation; and (3) the interests and incentives of the representative must be sufficiently aligned

16

with those of the class." <u>Schering Plough</u>, 589 F.3d at 599.  The typicality "criterion acts as a bar to class certification only when 'the legal theories of the named representatives potentially conflict with those of the absentees.'" <u>Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.</u>, 259 F.3d 154, 183 (3d Cir. 2001), <u>as amended</u> (Oct. 16, 2001) (quoting <u>Georgine</u>, 83 F.3d at 631).

Here, Named Plaintiffs assert that Rule 23(a)(3)'s typicality requirement is met because their "claims—violation of New Jersey wage laws for unpaid work, including overtime—are identical to the claims of the [Rule 23 class]." Cert. Mot. at 17.  In support, Named Plaintiffs point to and compare the excerpted deposition testimony and declarations of several Class Plaintiffs who testified or declared to be seeking allegedly withheld compensation for unpaid wages and/or overtime compensation from attending trainings,[11] <u>see id.</u> at 17–18 (citing, <u>e.g.</u>, <u>id.</u>, Ex. C at 2 ¶ 7; <u>id.</u> at 6 ¶ 6; <u>id.</u> at 10 ¶ 7), and/or for performing non-billable work, <u>see id.</u> (citing <u>e.g.</u>, <u>id.</u>, Ex. C at 10 ¶ 6; <u>id.</u>, Ex. V at 23:23–25:15; <u>id.</u>, Ex. W at 41:14–16; <u>id.</u>, Ex. X at 31:23–32:9; <u>id.</u>, Ex. Y at 36:14–37:8).

In opposition, Defendant argues that its defenses to Named Plaintiffs' claims and its defenses to Class Plaintiffs' claims are too individualized to merit a finding of typicality.  <u>See</u> Def.'s Opp'n to Cert. Mot. at 20–24.  The Court disagrees and finds typicality here.

First, Named Plaintiffs advance the same legal theories under their Certification Motion as would all Class Plaintiffs—that is, Defendant's policies and practices of denying overtime wages for time spent attending trainings and/or for performing non-billable work in excess of forty hours per week violate the NJWHL and NJWPL.  Named Plaintiffs' alleged injuries of unpaid overtime

---

[11] Named Plaintiffs have provided the Court with excerpted deposition testimony from six of Defendant's former non-exempt, hourly-paid employees.  <u>See generally</u> Cert. Mot., Exs. T, U, V, W, X, Y.  Named Plaintiffs have also provided the Court with six declarations from six of Defendant's former non-exempt, hourly paid employees.  <u>See generally</u> Cert. Mot., Ex. C.  Specifically, Exhibit C to the Certification Motion contains the Declarations of Justin Irizzary, Robert Scott II, Troy Campbell, Reginald Bagby, Jahmari Hill, and Jonathan Ayala, respectively.

are representative of Class Plaintiffs' injuries. The facts are generally the same for Named Plaintiffs and Class Plaintiffs alike. Named Plaintiffs recall having attended mandatory trainings for which they did not receive overtime compensation. See Cert. Mot., Ex. B at 3 ¶¶ 10–11; id. at 7–8 ¶¶ 8–10. Certain Class Plaintiffs have testified to or declared the same. See id., Ex. C at 3–4 ¶¶ 8–9; id. at 7 ¶ 8; id. at 11–12 ¶ 9. Named Plaintiffs also attest to not receiving overtime compensation for all hours worked because Defendant may contract with its clients to exclude certain work as non-billable. See id., Ex. B at 2 ¶ 6; id. at 7 ¶ 6. Certain Class Plaintiffs have recalled receiving similar treatment by Defendant. See id., Ex. C at 10 ¶ 6; id., Ex. V at 23:23–25:15.

Second, Named Plaintiffs are not subject to unique defenses that could become the focus of the litigation. Defendant argues that Plaintiffs are not owed overtime compensation or cannot otherwise demonstrate that they are owed overtime compensation from attending mandatory trainings.[12] See, e.g., Def.'s Opp'n to Cert. Mot. at 20–24. Specifically, Defendant's defense to Walker's claim for unpaid training time is that "Walker cannot prove he performed work for which [Defendant] did not pay him." Id. at 21. As to Fogg's claim for unpaid training time, Defendant claims that it paid Fogg "for all time he entered correctly and also rectified various payroll errors he brought to its attention." Id. at 22. In attempting to point to the atypicality of putative class members' defenses, Defendant also highlights potential fact issues concerning whether Plaintiffs are owed overtime wages. See Def.'s Opp'n to Cert. Mot. at 23.[13] The Court is not persuaded.

---

[12] Defendant does not argue against typicality for those putative class members who claim to be owed overtime wages from performing non-billable work. See generally Def.'s Opp'n to Cert. Mot. at 20–24.

[13] For example, Defendant argues that at least one Class Plaintiff testified to not participating in virtual trainings, see id. (citing id., Ex. L ("Lawson Dep. Tr.") at 22:25–23:4, 28:13–16), and further argues that certain Class Plaintiffs "did not report time spent completing trainings at home as hours worked," id. (citing id., Ex. O ("Jah Dep. Tr.") at 19:7–9; id., Ex. Q ("Rosario Dep. Tr.") at 32:3–11; id., Ex. I ("Knight Dep. Tr.") at 43:10–13).

First, Defendant mischaracterizes the testimony of certain Class Plaintiffs. Lamin Jah testified that they did not remember whether they submitted time spent training at home as hours worked—not that they did not report time. See id., Jah Dep. Tr. 19:7–9. Similarly, Jermaine Rahman Knight testified that they could not recall whether they recorded time spent training as hours worked—not that they did not report time. See id., Knight Dep. Tr. at 43:10–13.

Moreover, not only do these potential defenses apply to Named Plaintiffs and Class Plaintiffs alike, but their applicability centers on slight factual differences that are relevant for this Court's predominance inquiry—not typicality. See Covachuela v. Jersey Firestop, LLC, No. 20-8806, 2024 WL 4826054, at *7 (D.N.J. Nov. 19, 2024). Additionally, these factual differences—such as which Class Plaintiffs attended which trainings, for how long, and whether they properly recorded and submitted this time as compensable—"do not render the representative atypical" because "the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members." Schering Plough, 589 F.3d at 598.

Third, Named Plaintiffs' interests and incentives are sufficiently aligned with that of the putative class. The Court is unable to discern a reason why Named Plaintiffs' interests or incentives in pursuing this lawsuit would differ from Class Plaintiffs. Named Plaintiffs seek the protections under New Jersey's wage-and-hour laws, as do Class Plaintiffs.

Therefore, the Court finds that Rule 23(a)(3)'s typicality requirement is satisfied.

### d.    Adequacy

Rule 23(a)(4)'s adequacy requirement is satisfied if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ P. 23(a)(4). This requires analysis of two factors: "(1) whether counsel is qualified, experienced, and able to conduct the litigation; and (2) whether any conflicts of interest exist between the named parties and the class they seek

to represent." Carrow v. FedEx Ground Package Sys., Inc., No. 16-3026, 2019 WL 7184548, at *9 (D.N.J. Dec. 26, 2019) (citing Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d at 312). Defendant does not appear to challenge the adequacy of Named Plaintiffs' counsel as class counsel. The Court takes note of counsel's experience in wage-and-hour class actions, having successfully pursued class certification and resolution throughout the United States. See Morelli Decl. ¶¶ 3–7. Therefore, the Court is satisfied that Named Plaintiffs' counsel is adequate to represent the interests of the class.

In addition, the Court finds that Named Plaintiffs will fairly and adequately represent the putative class. As discussed above, see supra § IV.A.3.c, Named Plaintiffs are pursuing the same claims based on the same legal theories as other Class Plaintiffs. Compare Cert. Mot., Ex. B, with id., Ex. C; see also In re Cmty. Bank of N. Va. Mortg. Lending Prac. Litig., 795 F.3d 380, 394 (3d Cir. 2015) (finding Rule 23(a)(4)'s adequacy requirement satisfied when named plaintiffs and members of the class were "all pursuing damages under the same statutes and the same theories of liability, and the differences among them will not, at least as things presently stand, pit one group's interests against another."). First, Named Plaintiffs allege that they had to attend mandatory trainings and did not receive overtime compensation for hours worked in excess of forty hours per week. They also claim that they were not paid overtime for hours worked that were non-billable under certain client contracts. Named Plaintiffs claim harm through both the Training Claim and the Non-Billable Claim. Accordingly, Rule 23(a)(4)'s adequacy requirement is satisfied.

### 4. Rule 23(b)(3) Requirements

#### a. Predominance

To satisfy the first requirement of Rule 23(b)(3), a plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual

members." Fed. R. Civ. P. 23(b)(3).  "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 623 (1997).  And although courts may not decide cases on the merits at the class certification stage, a court must essentially "formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case." In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 311 (3d Cir. 2008), as amended (Jan. 16, 2009) (quoting In re New Motor Vehicles Can. Exp. Antitrust Litig., 522 F.3d 6, 20 (1st Cir. 2008)).

"In practice, this means that a district court must look first to the elements of the plaintiffs' underlying claims and then, through the prism of Rule 23, undertake a rigorous assessment of the available evidence and the method or methods by which the plaintiffs propose to use the evidence to prove those elements." Reinig v. RBS Citizens, N.A., 912 F.3d 115, 128 (3d Cir. 2018) (quotation marks omitted).  "If proof of the essential elements of the cause of action requires individual treatment, then class certification is unsuitable." Hydrogen Peroxide Antitrust Litig., 552 F.3d at 311 (quoting Newton, 259 F.3d at 172).

Here, the Training Claim involves the alleged denial of overtime compensation to Class Plaintiffs for time spent attending mandatory trainings in violation of the NJWHL. See, e.g., Cert. Mot. at 1; Pls.' Reply for Cert. at 8.  Named Plaintiffs derivatively claim that Defendant has failed to timely pay overtime compensation to Class Plaintiffs under the NJWPL. See Cert. Mot. at 23 n.71.

As to the Non-Billable Claim, Named Plaintiffs similarly allege that Defendant has denied and/or underpaid overtime compensation earned by Class Plaintiffs for time spent working pursuant to preexisting contracts excluding certain work as non-billable in violation of the

NJWHL.  See Cert. Mot. at 8–9.  Named Plaintiffs also derivatively claim that Defendant has failed to timely pay overtime compensation to Class Plaintiffs under the NJWPL.  See Cert. Mot. at 23 n.71.

To sufficiently prove the NJWHL claim for purposes of class certification, Named Plaintiffs must demonstrate that Class Plaintiffs "(a) worked overtime hours, (b) without receiving overtime pay."  Hargrove v. Sleepy's LLC, No. 10-01138, 2022 WL 617176, at *11 (D.N.J. Mar. 2, 2022).  To prove a violation of N.J.S.A. 34:11-4.3 for failure to timely pay wages owed, Named Plaintiffs must demonstrate that Defendant failed to pay owed wages by "the regular payday for the pay period during which the employee's termination, suspension or cessation of employment . . . took place."  Young v. Icreditworks Inc., No. 24-2111, 2024 WL 5241243, at *2 (D.N.J. Dec. 27, 2024) (quoting N.J.S.A. 34:11-4.3).[14]  Named Plaintiffs concede that their NJWPL claim is "derivative of the NJWHL claim," see, e.g., Cert. Mot. at 23 n.71, so the Court will analyze the NJWPL claim only if applicable.

At this stage, "the predominance requirement is met only if the district court is convinced that the essential elements of the claims brought by a putative class are capable of proof at trial through evidence that is common to the class rather than individual to its members."  Reinig, 912 F.3d at 127 (quotation marks omitted).  Accordingly, the Court will analyze Named Plaintiffs' claims—the Training Claim and the Non-Billable Claim—in turn.[15]

---

[14] If an employer fails to pay wages as required by the statute, an employee may recover in a civil action the "full amount" of unpaid wages due, plus liquidated damages of up to 200 percent of the wages due, along with costs and reasonable attorney's fees as allowed by the Court.  N.J.S.A. 34:11-4.10(c).

[15] As previewed above, "[i]t is often appropriate to discuss commonality and predominance together because the commonality inquiry is subsumed into the predominance inquiry."  Reyes v. Netdeposit, LLC, 802 F.3d 469, 486 (3d Cir. 2015).  Thus, the predominance discussion below also accounts for the commonality requirement.

#### i.        The Training Claim

Named Plaintiffs argue that the Training Claim is provable by common evidence on a class-wide basis.  In opposing, Defendant contends that individual inquiries of fact preclude this Court from finding that Named Plaintiffs' NJWHL claim is provable class-wide by common evidence.  See, e.g., Def.'s Opp'n to Cert. Mot. at 9–11, 26–27.  Specifically, Defendant points to the several ways that Class Plaintiffs record and submit compensable time, which, altogether, would make this Court's determination of liability and damages contingent on individual review of each class members' submissions and payments.  See id. at 25–27.

The Court agrees with Named Plaintiffs.  "To assess whether predominance is met at the class certification stage, a district court must determine whether the essential elements of the claims brought by a putative class are 'capable of proof at trial through evidence that is common to the class rather than individual to its members.'"  Gonzalez v. Corning, 885 F.3d 186, 195 (3d Cir. 2018).  Predominance does not require finding that Named Plaintiffs will prevail—only that the question of liability can be answered with common evidence, no matter the answer.  See, e.g., Vista Healthplan, Inc. v. Cephalon, Inc., No. 06-1833, 2020 WL 1922902, at *10 (E.D. Pa. Apr. 21, 2020) ("Rule 23(b)(3) requires a showing that questions common to the class predominate, not that those questions will be answered, on the merits, in favor of the class.") (quoting Amgen, 568 U.S. at 459 (2013) (emphasis in original)).

Thus, Named Plaintiffs must demonstrate for class certification purposes that Defendant can be found liable for violating the NJWHL, using common evidence applicable on a class-wide basis.  Plaintiffs must prove that Class Plaintiffs worked overtime hours—i.e., hours in excess of 40 hours per week—without receiving overtime compensation—i.e., 1.5 times the employee's hourly rate.  See N.J.S.A. 34:11-56a4(b)(1).  Therefore, proving liability under the Training Claim

will require demonstrating that Class Plaintiffs attended a mandatory training, did not receive compensation for attending, and would be entitled to overtime compensation.

First, Class Plaintiffs' attendance at trainings is provable by common evidence. Class Plaintiffs have worked or are working in one of two New Jersey facilities. Class Plaintiffs are required to attend mandatory trainings, which are attended remotely through use of a personal computer or mobile phone or in-person through use of Defendant's computers located at one of Defendant's facilities. While not all Class Plaintiffs attend the same trainings, see Barrett Dep. Tr. at 169:20–170:17, Defendant can track the location, date, time, length, and content of each attended training, as well as the employee who attended said training. See generally Trainings List; see also Barrett Dep. Tr. at 172:22–173:1 ("Q. . . . [I]s Clean Harbors able to see records of training course completion? A. Yes."). Therefore, attendance at trainings is provable by common evidence.

Second, whether Class Plaintiffs were properly compensated for attending trainings is provable by common evidence. It bears noting at the outset that Defendant's first Rule 30(b)(6) witness designee, Shawn Barrett, admitted that Defendant's employees who attend mandatory trainings would be owed compensation for attending trainings. See Barrett Dep. Tr. at 188:20–189:12. They further admitted that Defendant's employees who are not compensated for attending trainings are owed compensation, and that "investigative work" of reviewing employee payroll documents can be conducted to confirm whether an employee was properly compensated for training time. See id. at 188:20–189:5, 196:20–24. These concessions alone strongly support a finding of predominance.

In any event, this "investigative work" can be conducted by using common evidence applicable on a class-wide basis. Class Plaintiffs are subject to the same timekeeping policies and

compensation structure. Class Plaintiffs are paid the same hourly rate while attending trainings as they earn for their normal pay rate. See Barrett Dep. Tr. at 170:18–171:3. Class Plaintiffs can record and submit their billable and non-billable time in different ways. Class Plaintiffs record and submit billable time via Time Card, see McKnight Decl. ¶¶ 9–13, and record and submit non-billable time by completing Shop Sheets,[16] see generally Shop Sheet Policy.

According to Shawn Barrett, Defendant's first Rule 30(b)(6) witness designee, a Class Plaintiff who attends a training must record and submit time spent training by submitting via both Time Card and Shop Sheets. See Barrett Dep. Tr. at 97:2–99:10.[17] Defendant's employees' submitted time is memorialized in and can be confirmed by paystubs, which separately track regular hours, overtime hours, standby time, and standby time exceeding 40 hours per week. See, e.g., Cert. Mot., Exs. F, H, Q. A Class Plaintiff's paystub—which contains all hours worked for that given pay period—can be compared to time entered via Time Card to confirm billable time. A Class Plaintiff's paystub can also be compared to time entered via Shop Sheet submission to confirm non-billable time. Non-billable time can be compared with Defendant's Training List to confirm that it includes time spent in attendance to a mandatory training.

Otherwise, uncompensated time spent training can be calculated the following way by evidence common to the putative class. If a Class Plaintiff attended a mandatory training, did not submit a Shop Sheet detailing the time worked in attendance, and did not receive payment for

---

[16] A discussed above, putative class members can also submit time worked through Multi-Task Worksheets, see Barrett Dep. Tr. at 113:1–16; Fogg Dep. Tr. at 52:15–54:1, and through Bulk Load Worksheets, see Fogg Dep. Tr. at 44:7–46:12.

[17] Defendant's second Rule 30(b)(6) witness designee, Keinna McKnight, testified that employees who participate in mandatory trainings at-home must record and submit their time via Shop Sheets. See McKnight Dep. Tr. at 52:19–54:7. According to McKnight, an employee who completes a Shop Sheet to track at-home training submits it to their "leadership team," who approves it for entry into Time Card. See id. It is unclear if the creator of the Shop Sheet—the employee—submits it into Time Card, or if the Shop Sheet is handed off to someone else for submission. In any event, the result is the same for purposes of class certification: several records of training attendance exist for review and verification of payment.

attending, they are likely owed compensation.  Similarly, if a Class Plaintiff attended a mandatory training, did not submit or cause to be submitted the time worked in attendance via Time Card, and did not receive payment for attending, they are likely owed compensation.  If a Class Plaintiff attended a mandatory training, and only submitted either a Shop Sheet or time worked via Time Card,[18] a Reconciliation Report would be created to detail the discrepancy.  If a Reconciliation Report is created, that Reconciliation Report can be compared to the hours recorded on that class member's paystub to ensure that member was paid for all time worked.  If a Reconciliation Report is not created for a Class Plaintiff, their billable and non-billable time can be verified by comparing the documents discussed above.  If a Class Plaintiff attended a mandatory training but submitted neither a Shop Sheet nor time worked via Time Card, Defendant will have record of that member's attendance at training.  <u>See generally</u> Trainings List.  All of this can be accomplished by reviewing Defendant's own documents.

Finally, whether Class Plaintiffs are actually owed overtime compensation—as opposed to owed regular time—from hours accrued attending mandatory trainings can be proven by generalized proof consisting of Defendant's payroll and training records.  <u>See, e.g.</u>, <u>Carr v. Flowers Foods, Inc.</u>, No. 15-6391, 2019 WL 2027299, at *14–15 (E.D. Pa. May 7, 2019) (finding inquiry into whether Plaintiffs worked more than 40 hours a week without adequate compensation "is susceptible to class-wide proof"); <u>Williams v. Sweet Home Healthcare, LLC</u>, 325 F.R.D. 113, 129 (E.D. Pa. 2018) (stating that plaintiffs may rely on defendants' payroll records to establish common evidence of unlawful pay practices).  These records are common to all Class Plaintiffs.  And

---

[18] According to Defendant's Shop Sheet Policy, time spent working not billable to customers—which includes trainings—must be submitted with an "appropriate explanation of the" non-billable time worked.  <u>See</u> Shop Sheet Policy.  As a result, a Shop Sheet that is submitted to account for hours spent training will include an explanation for that training.

26

although questions of individual damages will require individual inquiries, "obstacles to calculating damages may not preclude class certification" provided that the class can show "the fact of damage . . . on a common basis." Harnish v. Widener Univ. Sch. of L., 833 F.3d 298, 306 (3d Cir. 2016) (quotation marks omitted); see also Troncone v. Velahos, No. 10-2961, 2013 WL 1222630, at *6 (D.N.J. Mar. 25, 2013) (predominance existed among the proposed class despite variations in hours worked and rate of pay).

Accordingly, Named Plaintiffs have satisfied their burden for purposes of the predominance inquiry as it pertains to the Training Claim.[19]

### ii.    The Non-Billable Claim

Named Plaintiffs argue the Non-Billable Claim can be proven by evidence common to all Class Plaintiffs. Defendant argues in opposition that determining liability as to the Non-Billable Claim turns on individual circumstances. See Def.'s Opp'n to Cert. Mot. at 25–27. Generally, both parties spend little time arguing whether Rule 23(b)(3)'s predominance requirement is satisfied specifically as to the Non-Billable Claim. The Court agrees with Defendant and finds the Non-Billable Claim unsuitable for class adjudication.

The Non-Billable Claim appears to center on contracts between Defendant and Defendant's customers that deem certain unspecified work "non-billable." See, e.g., Cert. Mot. at 8; see also McKnight Dep. Tr. at 35:10–36:5, 50:25–51:3. Named Plaintiffs allege that Defendant does not properly compensate Class Plaintiffs who perform non-billable work because Defendant does not

---

[19] As aptly explained in Carrow v. FedEx Ground Package Systems, Inc.: "If Defendant[s are] found liable and complex damages issues present themselves, the Court has a number of tools it may avail itself of, including: 'appointing a magistrate judge or special master to preside over individual damages proceedings; decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; creating subclasses; or, altering and amending the class.'" 2019 WL 7184548, at *12 (quoting Martins v. 3PD Inc., No. 11-11313, 2014 WL 1271761, at *12 (D. Mass. Mar. 27, 2014)). Here, Defendant's objections to class certification because questions of individualized damages exist do not preclude satisfaction of the predominance inquiry.

get paid.  See Cert. Mot. at 8.

But what may constitute this unpaid, non-billable work recognized as such under customer contracts appears to differ.  At least two Class Plaintiffs theorize that billable work becomes uncompensated non-billable work if hours worked exceed a predetermined number of hours.  See, e.g., Def.'s Opp'n to Cert. Mot., Ex. N ("Wade Dep. Tr.") at 46:1–23; Rosario Dep. Tr. at 23:23–25:4.  A different Class Plaintiff has declared that Defendant fails to compensate for time spent traveling.  See, e.g., Cert. Mot., Ex. C at 10 ¶ 6.  Other Class Plaintiffs have generally recalled cases where foremen underreport their time.  See, e.g., id. at 14 ¶ 7 ("[W]hen we were called to the shop we would not get paid once we arrived."); id. at 2 ¶ 7.  And Named Plaintiffs seem to suggest that unspecified standby time—like a weather delay—will go uncompensated or undercompensated because Defendant cannot bill this time to its customers.  See Cert. Mot. at 8 (citing McKnight Dep. Tr. at 39:4–40:2).

Named Plaintiffs claim that Defendant effectuates this scheme in different ways.  For example, Defendant withholds owed compensation by having "billing specialists . . . change employees' hours 'based on what [Defendant] can bill to their clients.'"  Id. at 8–9 (quoting Cert. Mot., Ex. B at 2 ¶ 6; id. at 7 ¶ 6).  Defendant's managers, supervisors, and foremen "frequently fail to accurately record the actual time worked by Plaintiffs."  See Am. Compl. ¶ 18.  Defendant also fails to submit Plaintiffs' time sheets.  See Cert. Mot., Ex. B at 7 ¶ 6.

For additional support, Named Plaintiffs point to the declarations of five Class Plaintiffs who all attest to receiving less compensation than for hours worked.  See Cert. Mot. at 8 n.32.[20]

---

[20] Justin Irizarry believes that these payment "discrepancies are due to the specialist not communicating to the crew how many hours [they are] actually getting compensated for on a given shift or week."  See Cert. Mot., Ex. C at 2 ¶ 7.  Robert Scott II claims that the hours he worked do not equate to the hours he received compensation for because foremen "frequently failed to accurately record the actual time" worked, or because "the specialist ended up billing the customer for less time than [they] actually worked."  Id. at 6 ¶¶ 4–5.  Troy Campbell and Reginald Bagby declare experiencing the same treatment as Robert Scott II.  Id. at 10 ¶¶ 5–6; id. at 14 ¶¶ 6–7.

But neither these declarations nor Named Plaintiffs' briefing demonstrate to this Court that common evidence predominates on questions of liability and damages as to the Non-Billable Claim.

For the Non-Billable Claim to satisfy the predominance requirement, Named Plaintiffs must demonstrate that Defendant can be found liable for violating the NJWHL, N.J.S.A. 34:11-56a4, using common evidence applicable on a class-wide basis. Determining liability under the relevant provisions of the NJWHL requires the same analysis as that of the Training Class: putative class members worked overtime hours—i.e., hours in excess of 40 hours per week—without receiving overtime compensation—i.e., 1.5 times the employee's hourly rate. See N.J.S.A. 34:11-56a4(b)(1). Therefore, to prove liability Plaintiffs must demonstrate that they worked certain hours, that Plaintiffs did not receive proper compensation for working those hours, and, but for the withheld or underpaid wages, Plaintiffs would be entitled to overtime compensation for which they did not receive.

Named Plaintiffs do not provide a method or methods by which they propose to use common evidence to prove liability under the NJWHL on a class-wide basis. Proof of the elements under the NJWHL for the Non-Billable Claim will necessarily require individual treatment. See, e.g., Reinig, 912 F.3d at 128. This analysis is unlike that required by the Training Claim, where proof of attendance at training can be cross-referenced with employee payroll records to determine if an attending Class Plaintiff was compensated for that training. Here, the proffered reasons for overtime vary. Some Class Plaintiffs claim that they were not compensated during weather delays or travel. Others claim that they worked hours exceeding a predetermined amount, so those hours were not counted. And others claim that foremen fail to report or underreport their hours, for no definite reason. Each claim is different. Determining liability as to each would require an

29

individual inquiry unsuitable for class adjudication.

Accordingly, Named Plaintiffs have failed to meet their burden with respect to the Non-Billable Claim.

### b.    Superiority

A party seeking class certification under Rule 23(b)(3) must show that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "The superiority requirement asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication." Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions, 148 F.3d at 316 (internal quotation marks and citation omitted). Rule 23(b)(3) provides a non-exhaustive list of factors relevant to the superiority requirement, including: the class members' interests in individually controlling the prosecution of separate actions; the extent and nature of any similar litigation already commenced by class members; the desirability of concentrating the litigation in a particular forum; and the difficulties likely to be encountered in the management of a class action. Fed. R. Civ. P. 23(b)(3)(A)–(D).

As the Court has found that the Non-Billable Claim is incapable of satisfying Rule 23(b)(3)'s predominance requirement at this time, see supra § IV.A.4.a.ii, the Court will limit its superiority analysis to that of only the Training Claim. Defendant argues that individual adjudication of each Class Plaintiffs' claims is superior to class adjudication because the Court's determination of liability is too individualistic. See Def.'s Opp'n to Cert. Mot. at 27–28. The Court disagrees.

The difficulties likely to be encountered in the management of the class action are not so difficult as to render individual adjudication superior to class treatment. The Court's ultimate

30

determination of liability and calculation of damages will necessarily require some level of individual inquiry.  But as discussed above, such inquiries can be resolved by use of common evidence applicable on a class-wide basis.  Additionally, "[a]ny issue determining damages does not defeat the superiority of a class action as to [Defendant's] liability."  <u>Hargrove</u>, 2022 WL 617176, at *12 (D.N.J. Mar. 2, 2022).

The remaining factors listed in Rule 23(b)(3) are also met here.  First, the Court lacks specific information regarding Class Plaintiffs' interests in controlling the prosecution of their claims in separate actions.  However, the cost and complexity of pursing these claims on an individual basis may be prohibitive for employees who earn at or around $20.00 an hour.  <u>See, e.g.</u>, Am. Compl. ¶ 15; <u>see also</u> Def.'s Opp'n to Cert. Mot., Ex. X (disclosing Elieser Claudio earns $22.00 an hour).  And the "average, unliquidated NJWHL claim for class members is just $4,138.99."  <u>See</u> Morelli Decl. ¶ 11.  Second, neither Named Plaintiffs' counsel nor the Court are aware of any similar litigation commenced by Class Plaintiffs concerning this controversy.  <u>See id.</u> ¶ 12.  Third, conducting the litigation in New Jersey is preferred given that the class is defined by reference to those non-exempt, hourly employees who worked or currently work in New Jersey.

Accordingly, the Court finds that Named Plaintiffs have satisfied the superiority requirement as to the Training Claim.

### 5.    Consideration of Rule 23(c)(4)

Named Plaintiffs urge, as an alternative to class certification of both claims, that the Court certify a subclass of either the Training Claim or the Non-Billable Claim.  <u>See</u> Pls.' Reply for Cert. at 20.  The Court will exercise its discretion under Rule 23(c)(4) and certify the Training Claim as an issues class.

Rule 23(c)(4) states that "[w]hen appropriate, an action may be brought or maintained as a

class action with respect to particular issues." Fed R. Civ. P. 23(c)(4). "[A] court's decision to exercise its discretion under Rule 23(c)(4), like any other certification determination under Rule 23, must be supported by rigorous analysis." Gonzalez, 885 F.3d at 202 (internal citation and quotation marks omitted). However, "Rule 23(c)(4) is only proper if the other requirements of Rule 23(a) and (b) are first met." Rowe v. E.I. Dupont De Nemours & Co., 262 F.R.D. 451, 467 (D.N.J. 2009). The kinds of classes that may be certified under 23(c)(4) classes may be issues related to overall liability, particular elements of a claim, or issues that would substantially advance litigation. Russell v. Educ. Comm'n for Foreign Med. Graduates, 15 F.4th 259, 269–70 (3d Cir. 2021) ("[D]istrict courts may certify 'particular issues' for class treatment even if those issues, once resolved, do not resolve a defendant's liability, provided that such certification substantially facilitates the resolution of the civil dispute, preserves the parties' procedural and substantive rights and responsibilities, and respects the constitutional and statutory rights of all class member[s] and defendants.").

As the Court determined above, the Training Claim satisfies Rule 23 and all that it requires. Consideration of the following Gates factors support certifying the Training Claim as an issues class:

> [1] the type of claim(s) and issue(s) in question;
> [2] the overall complexity of the case;
> [3] the efficiencies to be gained by granting partial certification in light of realistic procedural alternatives;
> [4] the substantive law underlying the claim(s), including any choice-of-law questions it may present and whether the substantive law separates the issue(s) from other issues concerning liability or remedy;
> [5] the impact partial certification will have on the constitutional and statutory rights of both the class members and the defendant(s);
> [6] the potential preclusive effect or lack thereof that resolution of the proposed issue class will have;
> [7] the repercussions certification of an issue(s) class will have on the effectiveness and fairness of resolution of remaining issues;
> [8] the impact individual proceedings may have upon one another, including

whether remedies are indivisible such that granting or not granting relief to any claimant as a practical matter determines the claims of others;
[9] and the kind of evidence presented on the issue(s) certified and potentially presented on the remaining issues, including the risk subsequent triers of fact will need to reexamine evidence and findings from resolution of the common issue(s).

Id. at 268 (quoting Gates v. Rohm & Haas Co., 655 F.3d 255, 273 (3d Cir. 2011)).

In the aggregate, the nine Gates factors weigh in favor of class certification of the Training Claim. "While there is not much gloss in the case law on how to weigh [the first] factor, the Court finds that it counsels in favor of certifying the issues class." C.P. v. New Jersey Dep't of Educ., No. 19-12807, 2022 WL 3572815, at *15 (D.N.J. Aug. 19, 2022). The Training Claim centers on allegations of unpaid overtime for hours worked attending mandatory trainings. The issues in question are that of liability and damages. These issues would apply to all Class Plaintiffs under the Training Claim. Therefore, certifying the Training Claim as an issues class would "substantially facilitate[] the resolution of the civil dispute" based on the identical claims and issues. Russell, 15 F.4th at 269–70.

The second, third, and fourth factors also favor certifying the Training Claim as an issues class. The legal issues underlying the Training Claim are not overly complex. See N.J.S.A. 34:11-56a4(b)(1); N.J.S.A. 34:11-4.3. But the factual questions regarding liability—demonstrating that unaccounted hours from attending mandatory trainings precluded payment of overtime wages—are relatively complex, since each Class Plaintiffs' attendance at trainings will need to be confirmed and cross-referenced against payroll records. Similar factual questions regarding damages will require individual inquiries, yet not so individual as to predominate over common issues. See supra § IV.A.4.a.i. Therefore, adjudication of the Training Claim on a class-wide basis would undoubtedly be more efficient than mandating potentially hundreds of lawsuits over the same claims and issues. And, relatedly, there are no choice-of-law concerns that have been brought

to the Court's attention, as all putative class members seek the protection of New Jersey wage-and-hour laws. Therefore, this New Jersey District Court is well-prepared to resolve these claims and issues.

"Factors five through nine require the Court to consider the effect that issue class certification will have on later stages of the litigation." In re FieldTurf Artificial Turf Mtkg. & Sales Pracs. Litig., No. 17-2779, 2023 WL 4551435, at *10 (D.N.J. July 13, 2023) (citing Gates, 655 F.3d at 273). Since the Court has determined that the Non-Billable Claim cannot be certified under Rule 23(b)(3), the Training Claim is the only certifiable claim. The Court does not find that such partial certification of the Training Claim as an issues class would harm Defendant's or Class Plaintiffs' constitutional or statutory rights. See Mullins v. Direct Digit., LLC, 795 F.3d 654, 671 (7th Cir. 2015) ("As long as the defendant is given the opportunity to challenge each class member's claim to recovery during the damages phase, the defendant's due process rights are protected."); Am. Pipe & Constr. Co. v. Utah, 414 U.S. 538, 545–53 (1974) (tolling statute of limitations while class certification motions are pending).

The Court is unable to discern a preclusive effect that resolving the Training Claim will have, since resolution as to liability is provable by common evidence on a class-wide basis; yet damages under the NJWHL and NJWPL are individual in nature.

As to the seventh factor, the only remaining issues are those contained within the Training Claim, so providing an avenue to resolve the Training Claim on a class-wide basis would be the most efficient and effective means of achieving resolution.

The Court finds the eighth factor neutral, since the remedy sought here is monetary damages on an individual basis. The Court's determination of liability and damages as to one Class Plaintiff would not impact the liability and damages as to others, since each Class Plaintiff

is allegedly owed unpaid overtime wages.  Finally, the kind of evidence presented in support of the Training Claim would be overlapping and frequently identical.  As discussed above, see supra § IV.A.4.a.i, an examination of the Trainings List and its comparison to employee payroll records would aid in resolving the Training Claim.  After all, under the NJWHL, a determination of liability and damages are closely tied together, since unpaid overtime compensation overlaps as both.

In sum, the Court finds that certification of the Training Claim as an issues class will significantly advance this litigation.  Therefore, the Court finds that certification of the Training Claim is appropriate here pursuant to Rule 23(c)(4) and the Gates factors discussed above.

## B.    Defendant's Motion to Decertify Under FLSA

As noted, Defendant has moved for the decertification of the FLSA collective action.  See generally Decertification Mot.

Defendant first argues that Named Plaintiffs fail to present sufficient evidence of a common policy or practice that is violative of the FLSA.  See Decertification Mot. at 12–16.  Second, Defendant argues that factual differences underlying Opt-in Plaintiffs' claims weigh in favor of decertification. Id. at 16–20. Third, Defendant argues that the existence of individualized defenses and inconsistent testimony would make the adjudication of this matter as a collective action unmanageable. Id. at 21–24. Finally, Defendant argues that fairness and procedural considerations mandate decertification, given the factual differences of the asserted claims.  Id. at 24–26.

In response, Named Plaintiffs argue that Opt-in Plaintiffs are similarly situated because of their similar employment circumstances, their identical legal claims and theories, and the absence of Defendant's individualized defenses to liability.  See generally Pls.' Opp'n to Decertification Mot.  Named Plaintiffs argue in the alternative that this Court should only partially decertify this

matter if it finds that Opt-in Plaintiffs are not similarly situated in view of certain claims.  See id. at 37.  Defendant does not provide an argument in opposition to partial decertification.  See generally ECF No. 191 ("Def.'s Reply for Decertification").

At the outset, the Court observes that Defendant appears to conflate Rule 23's predominance inquiry with the FLSA's similarly situated analysis.  Compare Def.'s Opp'n to Cert. Mot. at 9–12, with Decertification Mot. at 7–11; see also Def.'s Opp'n to Cert. Mot. at 16 (arguing lack of "common proof" weighs against certification of collective action); Def.'s Reply for Decertification at 14 ("[N]o common proof can resolve all Plaintiffs' claims in one fell swoop").

While conceptually similar to Rule 23(b)(3)'s predominance inquiry, the FLSA's similarly situated analysis demands a much less stringent showing.  See Carr, 2019 WL 2027299, at *7 (citation omitted); see also Grayson v. K Mart Corp., 79 F.3d 1086, 1096 (11th Cir. 1996) (noting that the similarly situated requirement for FLSA collective actions is "considerably less stringent than the requirement of [Rule 23(b)(3)] that common questions predominate." (citation modified)). Collective certification, as opposed to class certification, requires demonstrating only that collective action members "are subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Zavala, 691 F.3d at 538. "The Zavala factors focus on the similarity of Plaintiffs' employment status, whereas Rule 23's predominance inquiry focuses on whether Plaintiffs will rely on the same proof at trial." Garcia v. Vertical Screen, Inc., No. 18-4718, 2022 WL 282541, at *7 (E.D. Pa. Jan. 31, 2022) (emphasis added).

In addition, partial decertification is appropriate here.  See Seward v. Int'l Bus. Machines Corp., No. 08-3976, 2012 WL 13059788, at *12 (S.D.N.Y. Jan. 20, 2012) (explaining that "[i]n some cases, where the record following discovery reveals that only some plaintiffs or claims are actually similar, the [c]ourt may decide in its discretion to grant a decertification motion only in

part" and collecting cases); see also Puglisi v. TD Bank, N.A., 998 F. Supp. 2d 95, 101 (E.D.N.Y. 2014) (explaining that, at the second stage of collective certification, courts "may very well . . . decertify the class or divide it into subgroups"). "The option of partial certification is important to consider, because it counters the argument that a collective action must be totally decertified if some members are not similarly situated to the others." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 585 (6th Cir. 2009).

Where, as here, plaintiffs' factual allegations greatly differ as they are made in support of a particular claim, decertification of the collective as to that claim may be warranted. For the reasons described below, the Court grants decertification of the Non-Billable Claim.

### 1.    Similarities of Plaintiffs' Factual and Employment Circumstances

Pursuant to Zavala v. Wal Mart Stores, Inc., the Court asks at this decertification stage "whether the plaintiffs are employed in the same corporate department, division, and location; whether they advance similar claims; whether they seek substantially the same form of relief; and whether they have similar salaries and circumstances of employment." 691 F.3d at 537–38. Finding that Named Plaintiffs are similarly situated to Opt-in Plaintiffs would mean finding "that one is subjected to some common employer practice that, if proved, would help demonstrate a violation of the FLSA." Id. at 538.

The Court is satisfied that the employment circumstances of the Opt-in Plaintiffs are sufficiently similar to that of each other and the Named Plaintiffs. However, due to the highly individualized nature of the Non-Billable Claim, the Court finds that factual differences among the Named Plaintiffs and Opt-in Plaintiffs warrant decertification as to that claim only.

Named Plaintiffs and Opt-in Plaintiffs perform primarily the same duties, have the same or similar job titles, were all employed during a relatively small period, participated in the same or

similar mandatory trainings, and were subject to the same employee policies—including those concerning timekeeping, billing, and compensation.

Walker was employed as an "equipment operator/field technician" in one of Defendant's two New Jersey facilities from approximately February 2020 to April 2023. Cert. Mot., Ex. B at 6 ¶ 2. Fogg was also employed as a "field service employee (specifically an equipment operator)" in one of Defendant's two New Jersey facilities from approximately February 2020 to March 2022. Id. at 1 ¶ 2.

The six collective action members who are represented by sworn declaration—Justin Irizzary, Robert Scott II, Troy Campbell, Reginald Bagby, Jahmari Hill, and Jonathan Ayala—each attest to being employed as field technicians for Defendant in one of Defendant's New Jersey facilities during similar time periods to Named Plaintiffs. See id., Ex. C at 1 ¶ 2; id. at 5 ¶ 2; id. at 9 ¶ 2; id. at 13 ¶ 2; id. at 17 ¶ 2; id. at 20 ¶ 2.

Other former non-exempt, hourly-paid employees also testified that they were employed by Defendant under similar titles. See, e.g., Knight Dep. Tr. at 17:13–19:11 (environmental technician); Lawson Dep. Tr. at 14:2–11 (driver); Def.'s Opp'n to Cert. Mot., Ex. M ("Douglas Dep. Tr.") at 13:16–23 (environmental technician); Wade Dep. Tr. at 16:7–9 (equipment operator, driver). As discussed above, these job titles all fall under the broad category of employment deemed "field service" employees by Defendant. See Barrett Dep. Tr. at 51:10–22.

These six declarants also attest to performing primarily the same duties—driving, operating equipment, cleaning—as each other and Named Plaintiffs. Compare Cert. Mot., Ex. B at 1 ¶ 3, and id. at 6 ¶ 3, with Cert. Mot., Ex. C at 1 ¶ 4; id. at 5 ¶ 3; id. at 9 ¶ 3; id. at 13 ¶ 4; id. at 17 ¶ 4; id. at 20 ¶ 4. Similarly, other former non-exempt, hourly-paid employees have testified as to the same. See, e.g., Knight Dep. Tr. at 53:25–54:4.

Furthermore, Named Plaintiffs and Opt-in Plaintiffs alike testify to or declare working over forty hours per week, and earning a similar hourly wage. See, e.g., Am. Compl. ¶ 17 (Fogg worked "approximately 60 hours per week," and Walker worked "approximately 50-to-60 hours per week."); Cert. Mot., Ex. C at 1 ¶ 3 (Justin Irizarry "typically worked at or over 40 hours per week, often working 50-90 hours per week."); id. at 9 ¶ 2 (Troy Campbell "often worked more than 40 hours per week," and at times, "worked around 80 hours per week."); id. at 13 ¶ 3 (Reginald Bagby "typically worked over 40 per week," and recalled "working 60 or more hours per week."); id. at 17 ¶ 3 (Jahmari Hill "typically worked 40 or more hours per week."); id. at 20 ¶ 3 (Jonathan Ayala "typically worked approximately 120 hours per week."); see also Def.'s Opp'n to Cert. Mot., Ex. X (disclosing Elieser Claudio earned $22.00 per hour in 2021); id., Ex. S at 2 (disclosing Walker earned $22.00 per hour in 2020); id., Ex. U at 2 (disclosing Fogg earned $23.00 per hour in 2020).

Named Plaintiffs and Opt-in Plaintiffs must participate in mandatory trainings. See, e.g., Barrett Dep. Tr. at 96:21–97:1, 169:10–13. Certain field service employees must also complete specialized trainings that are specific to their roles. See id. at 170:7–17. The "majority" of these mandatory trainings are attended virtually by field service employees, see id. at 171:9–11, but attendance at trainings is tracked and retained by Defendant, see generally Trainings List.

Named Plaintiffs and Opt-in Plaintiffs are subject to the same timekeeping policies and compensation policies. See generally Def.'s Compensation Policy; Shop Sheet Policy; see also Def.'s Opp'n to Cert. Mot., Ex. FF ("Overtime Pay Guidelines & Kronos Time Collection"). Defendant "requires all non-exempt employees to record and report all time they work for" Defendant. McKnight Decl. ¶ 7 (emphasis added). Defendant's compensation policy states that all "non-exempt [employees] are entitled to overtime pay for all hours worked beyond 40 hours in a work week, or as otherwise required by applicable federal state, provincial, or local law." Def.'s

Compensation Policy at 1.  Defendant's compensation policy also makes clear that overtime rate is "1.5 times the employee's normal hourly rate," <u>see id.</u> at 2, and that an employee's rate of pay does not change depending on the task or whether they are conducting billable or non-billable work, <u>see</u> Barrett Dep. Tr. at 170:18–171:3.

Named Plaintiffs do not argue that Defendant's formal policies violate the FLSA.  <u>See, e.g.</u>, Pls.' Opp'n to Decertification Mot. at 30 n.50.  Instead, Named Plaintiffs appear to argue that Defendant's informal policies and practices of failing to properly train employees on timekeeping, instructing that training time went unpaid, and altering and/or withholding compensation for non-billable hours worked are violative of the FLSA.  <u>Id.</u>

To be sure, the Court concludes that Defendant's timekeeping policies and compensation policies are facially lawful.  The Court agrees with other courts in this District that have recognized that "the existence of uniform policies and procedures is not dispositive" in evaluating whether putative collective action members are similarly situated.  <u>See, e.g.</u>, <u>Rivet v. Office Depot, Inc.</u>, 207 F. Supp. 3d 417, 424 (D.N.J. 2016); <u>Ivanovs v. BAYADA Home Health Care, Inc.</u>, No. 17-1742, 2021 WL 3464771, at *5 (D.N.J. Aug. 6, 2021).  And "[a]ccordingly, the fact that the [Opt-in Plaintiffs] track their hours . . . and are subject to [Defendant's] formal timekeeping policies is insufficient, without more, to demonstrate that [putative collective action members] are similarly situated for the purposes of a FLSA collective action."  <u>Zivali</u>, 784 F. Supp. 2d at 463.

Therefore, the Court looks to whether Defendant's alleged practices are uniformly applied to Named Plaintiffs and Opt-in Plaintiffs alike, such that adjudication of claims—the Training Claim and the Non-Billable Claim—as a collective is appropriate.  <u>See, e.g.</u>, <u>Zivali</u>, 784 F. Supp. 2d at 463.  The Court concludes that they are as to Opt-in Plaintiffs asserting the Training Claim but are not as to Opt-in Plaintiffs asserting the Non-Billable Claim.

While there are factual differences as to how Opt-in Plaintiffs may have previously recorded and submitted time, it is undisputed that they are supposed to track all time worked, including time spent training and time spent conducting non-billable work. Questions remain, however, as to whether Defendant properly instructed and trained its field service employees to record and submit time spent training. Several Opt-in Plaintiffs have admitted to receiving no or "brief[]" training on how to record time. See, e.g., Pls.' Opp'n to Decertification Mot., Ex. G at 2–4, 17–19, 22–24, 31–33, 42–44, 52–54, 57–59. Questions also remain as to whether Defendant has previously instructed or currently instructs its field service employees that they would not receive compensation for time spent training, which would disincentivize employees from recording and submitting this time. Several Opt-in Plaintiffs have recalled receiving this instruction. See, e.g., id. at 4–5, 25–28, 44–45.

But at bottom, record testimony points to specific company practices that were either applied or not applied to Opt-in Plaintiffs. Named Plaintiffs and Opt-in Plaintiffs argue that they are owed compensation for attending mandatory trainings. These putative collective action members seek the same relief by way of monetary compensation, i.e., unpaid overtime. Put differently, Opt-in Plaintiffs asserting the Training Claim are asserting sufficiently similar claims and are seeking sufficiently similar relief to that of Named Plaintiffs.

At this juncture, it is not the Court's role to resolve the merits of the Training Claim. Named Plaintiffs have demonstrated by a preponderance of the evidence that the Training Claim asserts the same factual predicate and seeks the same type of unpaid overtime. Therefore, Named Plaintiffs have met their burden of establishing that they are similarly situated to each other and the Opt-in Plaintiffs with respect to the Training Claim.

On the other hand, Named Plaintiffs and Opt-in Plaintiffs assert highly individualized

41

claims that aggregately make up the Non-Billable Claim.   Some putative collective action members argue that they are owed compensation for exceeding hours worked agreed upon by customer contracts.    Other putative collective action members argue that they are owed compensation for time spent driving, or time spent during a weather delay.   Others allege that supervisors generally underreport time spent working.   The Non-Billable Claim is too amorphous to be adjudicated collectively.   On this basis, the Court grants Defendant's Decertification Motion as to the Non-Billable Claim.

### 2.    Individualized Defenses

Next, the Court must evaluate "the different defenses to which the plaintiffs may be subject on an individual basis."  Halle, 842 F.3d at 226; Zavala, 691 F.3d at 536–37 ("Plaintiffs may also be found dissimilar based on the existence of individualized defenses.").

Defendant argues that its defenses to the claims at issue must be adjudicated individually, thereby making adjudication by collective action improper.   The Court concludes that Defendant's defenses are not so individualized to require decertification of those Opt-in Plaintiffs asserting the Training Claim.[21]   First, Defendant points to the difficulty proving its actual or constructive knowledge in allegedly failing to compensate for overtime.   See Decertification Mot. at 21–22. As Defendant correctly argues, the "FLSA stops short of requiring the employer to pay for work it did not know about, and had no reason to know about."   Id. at 21 (citing Reinig v. RBS Citizens, N.A., No. 15-01042, 2017 WL 8941219, at *9 (W.D. Pa. Aug. 2, 2017)).

But this argument is unpersuasive, since Defendant requires its employees to attend mandatory trainings and tracks the attendance of employees at said trainings.   In addition, Named

---

[21] Given the Court's conclusion that decertification is warranted as to the Non-Billable Claim, the Court will only address the remaining decertification factors as they relate to the Training Claim.

Plaintiffs point to several complaints made by Opt-in Plaintiffs who believed they were owed compensation for training time.  See, e.g., Pls.' Opp'n to Decertification Mot. at 34 & n.52.

From this, the Court can reasonably infer Defendant could have or should have known it was not properly compensating its employees for time spent training.  After all, the FLSA "requires employers to maintain accurate records to ensure that all workers" are appropriately paid.  Williams v. Tri-Cnty. Growers, Inc., 747 F.2d 121, 128 (3d Cir. 1984) (citation omitted).  "Where a company knows, or should know, of employees working overtime, it is the company's responsibility to ensure that they are paid for all time worked."  Steinberg v. TD Bank, N.A., No. 10-5600, 2012 WL 2500331, at *7 (D.N.J. June 27, 2012).  Therefore, Defendant's defense of lack of actual or constructive knowledge is not sufficiently individualized to warrant decertification of the Training Claim.

Second, Defendant argues that the credibility of certain Named Plaintiffs and Opt-in Plaintiffs is at issue, such that questions of liability would depend on an individualized inquiry.  See Decertification Mot. at 22–23.  For support, Defendant points to conflicting testimony between Named Plaintiffs' sworn declarations and their deposition testimony.  See id. (comparing Cert Mot., Ex. B, with Fogg Dep. Tr., and Walker Dep. Tr.).  But the Court cannot discern an inconsistency that drives it to question Named Plaintiffs' credibility.[22]  Defendant compares the testimony of different putative collective action members and how they recalled recording their time in different ways.  See id. at 23.  This disparity does not translate into lack of credibility.  And

---

[22] Moreover, the Court cannot find reference to the alleged statements at issue within the Declaration of Oreese Fogg or the Declaration of Kyle Walker.  See Cert. Mot., Ex. B at 2 ¶ 5 ("During my time with Clean Harbors, supervisory employees would record my hours and the hours worked by other field service employees on a 'PSE&G Multitask Worksheet.'  The supervisor hands these in to a billing/payroll specialist at the end of the day. But the time that is reported on them is often inaccurate or changed because our pay often does not line up with the hours that we actually worked."); id. at 7 ¶ 5 ("As a part of Clean Harbors' policies, Clean Harbors' managers/foreman would write down our hours worked on a paper sheet. The manager, supervisor, or foreman would then turn in the time sheet to payroll to track the work we did to bill customers.").

in any event, Defendant fails to reference any persuasive authority to suggest that purported credibility issues require decertification.  In fact, case law suggests the opposite.  See, e.g., Rivet, 207 F. Supp. 3d at 427–28; Ivanos, 2021 WL 3464771, at *5; Garcia, 2022 WL 282541, at *4.

Third, Defendant argues that determining liability under the FLSA will necessarily require individual review of whether putative collective action members were paid overtime compensation.  Decertification Mot. at 23–24.  Specifically, Defendant claims that it resolved payment discrepancies brought to its attention by certain Opt-in Plaintiffs.  See id.  But as discussed in the Court's Rule 23 predominance analysis of the Training Claim, questions of liability are not so individualized as to prevent adjudication by a collective.  See supra § IV.A.4.a.  Defendant's defenses apply equally to both Named Plaintiff and Opt-in Plaintiffs.  Therefore, Defendant's defenses to Named Plaintiffs' and Opt-in Plaintiffs' Training Claim are not sufficiently individualized to warrant decertification.

### 3.    Fairness and Procedural Considerations

Finally, this Court is urged to consider "the degree of fairness and procedural impact" of allowing this case to proceed as a collective.  Halle, 842 F.3d at 226 (internal quotation marks and citations omitted).

Defendant argues that permitting this case to proceed as a collective would be unmanageable.  But considerations of fairness and procedure weigh against decertification of collective treatment of the Training Claim.

The record testimony reflects over one hundred Opt-in Plaintiffs who seek overtime compensation for attending unpaid mandatory trainings.  The record testimony also "indicates similarities among [Named Plaintiffs' and Opt-in Plaintiffs'] duties, responsibilities, training, and tasks[; therefore,] a collective action would effectively lower the parties' costs, limit the

controversy to one proceeding, and promote judicial efficiency." <u>Ruffin</u>, 2014 WL 294675, at *4 (citing <u>Hoffmann-La Roche Inc. v. Sperling</u>, 493 U.S. 165, 170 (1989)).

"To the extent Defendant complains that decertification is necessary to protect its due process rights, [<u>see</u> Decertification Mot. at 24], these rights must be balanced with the rights of the plaintiffs, many of whom likely would be unable to bear the costs of an individual trial, to have their day in court." <u>Andrako v. U.S. Steel Co.</u>, 788 F. Supp. 2d 372, 383–84 (W.D. Pa. 2011) (internal quotation marks and citation omitted).

As discussed above, adjudication of the Training Claim by collective action is not so unmanageable such that decertification is warranted. Named Plaintiffs and Opt-in Plaintiffs assert the same claims and face the same defenses. It would unduly burden this Court—and unfairly prejudice these Opt-in Plaintiffs—to decertify this action and allow each to proceed individually. And given the identical claims, relief sought, and common proof under the Training Claim, the substantial likelihood of requiring "mini-trials" is low.

Based on the record and foregoing analysis, the Court concludes that Named Plaintiffs are similarly situated to the Opt-in Plaintiffs, insofar as they assert the Training Claim as a collective. Accordingly, the Court finds that the instant FLSA collective action does not warrant total decertification.

## V.    CONCLUSION

For the foregoing reasons, Named Plaintiffs' Certification Motion is **GRANTED in part** and **DENIED in part**. The Court grants certification of the Training Claim, as defined above, but otherwise denies the Certification Motion.

Defendant's Decertification Motion is **GRANTED in part** and **DENIED in part**. The Court grants decertification of the Non-Billable Claim, as defined above, but otherwise denies the

Decertification Motion.

      An appropriate Order will follow the entry of this Opinion.


Date: July 30th, 2025                       ***s/ Madeline Cox Arleo***
                                        **MADELINE COX ARLEO**
                                        **UNITED STATES DISTRICT JUDGE**